**PICARD CHEMICAL INC. PROFIT SHARING PLAN, et al., on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**PERRIGO COMPANY, et al., Defendants.**

**Nos. 1:95–CV–141, 1:95–CV–290.**

United States District Court,
W.D. Michigan,
Southern Division.

July 25, 1996.

Stephen C. Bransdorfer, Bransdorfer & Bransdorfer, P.C. Grand Rapids, MI, Reed Richard Kathrein, Milberg, Weiss, Bershad, Hynes, L.L.P., San Francisco, CA, Ellen A. Gusikoff, Spector & Roseman, P.C., San Diego, CA, for plaintiffs.

Stephen D. Turner, Law, Weathers & Richardson, Grand Rapids, MI, Joe A. Sutherland, Gardner, Carton & Douglas, Chicago, IL, for Perrigo Company, Michael J. Jandernoa, Lonnie L. Smith, M. James Gunberg, Steven N. Hutchinson, Robert P. Lasner, Mark Olesnavage, F. Folsom Bell, William C. Swaney, Ralph E. Klingenmeyer, Michael J. Jandernoa Trust, Michael J. Jandernoa, Swaney Associates, Ralph E. Klingenmeyer Trust, J. Klingenmeyer Trust, John Klingenmeyer Trust, Amy Klingenmeyer Trust, Sandra E. Hansen Trust, Richard G. Hansen, Richard G. Hansen Trust, Elizabeth A. Hansen Trust, Kristi L. Hansen Trust, Richard G. Hansen and Sandra E. Hansen Charitable Remainder Trust, Kristi L. Hansen, Elizabeth A. Hansen, Amy Klingenmeyer, John Klingenmeyer, Wilmington Investment Inc., Hillman Company, Henry L. Hillman Trust, Elsie Hillman.

Bruce W. Neckers, Rhoades, McKee, Boer, Goodrich, et al., Grand Rapids, MI, Michael B. Reuben, Gordon, Altman, Butowsky, Weitzen, et al., New York City, for Henry L. Hillman, The Hillman Family Trusts, Edward A. Craig, III, C.G. Grefenstette, Juliet Challenger, Inc., Audrey Hilliard Hillman, Juliet Lea Hillman, William Talbott Hillman, Henry Lea Hillman, Jr.

William K. Holmes, Warner, Norcross & Judd, L.L.P., Grand Rapids, MI, Dennis E. Glazer, Davis, Polk & Wardwell, New York City, for J.P. Morgan Securities Ltd., Morgan Stanley International, Smith Barney Shearson, Inc., Dean Witter Reynolds, Inc.

I. Background Facts ............................................... 1112

II. Standards of Review ........................................... 1114
 A. Pleading a Short and Plain Statement ...................... 1114
 B. Pleading Fraud with Particularity ......................... 1114
 C. Standard for Dismissal for Failure to State a Claim ........ 1115

III. Discussion .................................................... 1115
 A. Form of the Complaint .................................... 1115
 B. Reviewing the Complaint ................................. 1117
 C. Statute of Limitations Arguments ......................... 1118
 D. Count I: Section 10(b) and Rule 10b–5 "Fraudulent Scheme" Claims ....... 1119
 1. Distinguishing Primary Liability from Secondary Liability .............. 1119
 2. The Prima Facie Case ................................ 1121
 a. Misleading Statements ........................... 1121
 b. Materiality ...................................... 1121
 c. Scienter ........................................ 1125
 d. Causation ....................................... 1126
 3. Reviewing the Specific Allegations in the Complaint Under Fed. R.Civ.P. 9(b) ............ 1126
 a. Allegations Common to Many Defendants ......................... 1126
 b. The Perrigo Defendants ........................... 1127
 i) Outside Directors ............................. 1127
 ii) The "Remaining Perrigo Defendants" .......... 1127
 c. Underwriter Defendants ........................... 1128
 d. The Main Hillman Defendants ...................... 1128
 E. Count II: Section 10(b) "Misuse of Insider Information" Claims ........... 1128
 1. The Perrigo Defendants .............................. 1129
 2. The Underwriter Defendants .......................... 1129
 3. The Main Hillman Defendants ......................... 1129
 4. Defendant Swaney Associates ......................... 1130
 F. Counts III and IV: Section 20A "Insider Trading and Communication" Claims ......... 1130
 G. Count VI: Section 11 "False Filings" Claims ............... 1131
 H. Count VII: Section 12(2) "Statutory Seller" Claims ........ 1132
 I. Counts V and VIII: Section 15 Securities Act and Section 20(a) Exchange Act "Controlling Person" Allegations ............ 1133
 1. The Perrigo Defendants .............................. 1134
 2. The Underwriter Defendants .......................... 1135
 3. The Main Hillman Defendants ......................... 1135
 J. Counts IX through XII: "Equitable" Claims ............... 1136
 K. Motion for Rule 11 Sanctions ............................. 1137
 L. Motion for an Undertaking of Costs and Attorneys' Fees ....... 1137

IV. Conclusion .................................................... 1137

---

## OPINION

QUIST, District Judge.

This case arises out of the secondary public offering of Perrigo Company ("Perrigo") common stock held in October of 1993. Plaintiffs,[1] seeking to represent the class of all purchasers of Perrigo stock between May 11, 1993, and May 10, 1994,[2] allege in the First Amended Consolidated Class Action Complaint that defendants perpetrated a "fraud on the market." The Complaint seeks to recover damages under §§ 10(b), 20(a), and 20A of the Securities and Exchange Act of 1934 ("Exchange Act") and Rule 10b–5 promulgated thereunder, and §§ 11, 12(2), and 15 of the Securities Act of 1933 ("Securities Act"). This matter is before the Court on motions to dismiss filed by the "Under-

---

**1.** Picard Chemical Inc. Profit Sharing Plan, Elizabeth Pilling, Edward Pepper, David Levy, Elise Feldman, and Ted Goldberg.

**2.** Plaintiffs' motion to certify the class is currently pending before this Court.

writer defendants," [3] defendant Swaney Associates, the "main Hillman defendants," [4] the "nominal Hillman defendants," [5] the "nominal H/K defendants," [6] and "the Perrigo defendants." [7] The Perrigo defendants' motion is titled in the alternative as a motion to strike. Also before the Court are the Perrigo and the nominal H/K defendants' motion for Rule 11 sanctions and the Perrigo defendants' motion to require certain plaintiffs to post an undertaking for the payment of costs and attorneys' fees.

This case involves the consolidation of two separate cases. The first case, No. 1:95–CV–141, was filed on March 8, 1995, while the second, No. 1:95–CV–290, was filed on May 10, 1995. The first Consolidated Class Action Complaint was filed on June 9, 1995. The First Amended Consolidated Class Action Complaint (hereinafter "Complaint") was filed on September 22, 1995.

## I. Background Facts

Perrigo is a manufacturer and seller of over-the-counter ("OTC") pharmaceutical and personal care products for the store (private) brand market. Perrigo's nearly 2,250 customers are national and regional retail, drug, supermarket and mass merchandise chains.

In October 1993, 13 million shares of Perrigo common stock were sold in a secondary public offering. The public offering was underwritten on a firm commitment basis [8] at $31 per share by the Underwriter defendants. In May 1993, prior to the secondary offering, the price of Perrigo stock was $20 per share. After a *Barron's* article dated January 31, 1994, suggested that the fiscal 1995 earnings forecasts for Perrigo may be too high, the stock dropped 1½ points. The biggest one-day drop in stock price occurred after Perrigo's March 15, 1994, conference with industry analysts, when the price dropped 6¼ points to $22 per share. As of May 10, 1995, the price had fallen to $12.25 per share.

The Complaint is 129 pages and 161 paragraphs long. It asserts 11 counts against 19 defendants and 20 "nominal defendants." After a description of the parties and class allegations, plaintiffs claim that there was a general scheme by defendants to artificially inflate the price of Perrigo stock so that defendants could sell their shares at a huge profit. The Complaint does not allege that the defendants "cooked the books." Rather, the shareholder defendants are alleged to have utilized a registered secondary public offering accompanied by highly favorable press releases, influenced unaffiliated analysts and the press, and effected highly favorable filings with the Securities and Exchange Commission ("SEC"). The shareholder defendants are also alleged to have wrongfully manipulated the Perrigo stock price prior to October 1993 by announcing a stock split in July 1991 [¶ 32], and giving false reasons for the split [¶ 33]. The Underwriter defendants are alleged to have assisted in the

---

3. J.P. Morgan Securities Ltd., Morgan Stanley International, Smith Barney Shearson Inc., and Dean Witter Reynolds Inc.

4. Henry Hillman and C.G. Grefenstette individually, Grefenstette and Edward Craig as co-trustees of the Hillman Family Trusts, and Henry Hillman, Elsie Hillman and Grefenstette as co-trustees of the Henry L. Hillman Trust.

5. Juliet Simonds, William Talbott Hillman, Audrey Fisher, Henry Hillman, Jr., Juliet Challenger, Inc., Wilmington Investments, Inc., and The Hillman Company.

6. Joseph Klingenmeyer, John Klingenmeyer, Amy Klingenmeyer, Mrs. Richard G. Hansen, Kristi Hansen, Richard Hansen, Elizabeth Hansen, Mrs. Ralph Klingenmeyer as Trustee for the Joseph Klingenmeyer Trust, John Klingenmeyer Trust, Amy Klingenmeyer Trust, Joseph Klingenmeyer Management Trust, John Klingenmeyer Management Trust, and the Amy Klingenmeyer Management Trust.

7. Perrigo Company, Michael Jandernoa, Lonnie Smith, Richard Hansen, M. James Gunberg, Steven Hutchinson, Robert Lasner, Mark Olesnavage, F. Folsom Bell, William Swaney, and Ralph Klingenmeyer.

8. In a firm commitment underwriting, the issuer or owner of the securities sells all of the shares to be offered to one or more underwriters, at some discount from the offering price. Investors thus purchase shares in the offering directly from the underwriters (or broker-dealers who purchase from the underwriters), not directly from the issuer or prior owner. *See Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1215 (1st Cir. 1996).

shareholder defendants' scheme by, among other things, issuing favorable press releases and research reports, performing minimal due diligence, holding "road shows" to tout Perrigo stock, influencing the press and unaffiliated analysts to issue favorable reports regardless of whether the reports were false or misleading, and promising to support the price of the stock.

The plaintiffs' complaint, in essence, is that defendants put a positive spin on Perrigo's results, and made overly optimistic projections of Perrigo's future performance while not disclosing fundamental problems which might enable the reasonable investor to understand that these profits and projections were not indicators of long term or continuous growth. The time and manner in which statements were allegedly made appears in the headings below, while the allegedly material omissions which are supposed to demonstrate the misleading nature of these statements are listed thereunder: [9]

*Statements of May 11 to August 17, 1993:*

1) increasing raw material costs [¶ 29(a) ]

2) increasing expense of maintaining market share [¶ 29(b) ]

3) retail consolidation, shrinking shelf space, and expanded competition [¶ 29(c) ]

4) increased inventory risk [¶ 29(d) ]

5) gross margin risk due to customer demands that Perrigo assist in marketing, [¶ 29(e) ] and

6) analgesic market risk due to new product competition [¶ 29(f) ].

*Statements of August 23 to September 23, 1993.*

Plaintiffs reallege numbers 1–6 and add:

7) the adverse effects of companies switching from the prescription to the OTC market, [¶ 47(a) ] and

8) Perrigo's lack of plans to invest more money in fiscal 1994 [¶ 47(b) ].

*The Registration Statements of September 23, October 1, and October 20, 1993, and the Statements in the October 1993 Prospectus.*

Plaintiffs reallege numbers 1–7 and add:

9) price cuts by name brand manufacturers [¶ 51(a) ]

10) entry into store brand market by name brand manufacturers [¶ 51(b) ]

11) resistance by customers to expansion by Perrigo [¶ 51(c) ]

12) threat of new regional store brand companies [¶ 51(d) ]

13) encouragements to customers to stockpile inventory [¶ 51(e) ]

14) threat of unfair competition lawsuits [¶ 51(f) ]

15) declining purchases by main retail customers [¶ 51(g) ]

16) "SKU paring" [10] by major retail customers in order to reduce inventories and reduce product confusion [¶ 51(h) ]

17) threat to vitamin sales by proposed FDA rules [¶ 51(i) ]

18) hidden cost increases due to a cost of goods sold accounting change from the LIFO to FIFO system [11] [¶ 51(j) ], and

---

**9.** The numbering scheme represents the Court's interpretation of plaintiffs' Complaint. The allegations do not appear in the Complaint in this form.

**10.** "SKU paring" refers to a system of keeping track of inventory. For instance, at a major retailer such as Walmart, each product is encoded with an SKU number. When a product is sold, the product's bar code is scanned at the cash register and an electronic account is made of the sale.

**11.** **"Last-in, first-out (LIFO).** An accounting method which assumes that the first items sold were the last ones acquired and that any remaining inventory consists of the first items purchased. This method is an accounting technique that goes contrary to the flow of goods in most businesses. Its principal benefit is in reducing reported earnings—and taxes—in a period of rising prices."

\* \* \* \* \* \*

**"First-in, first-out (FIFO).** An accounting method which assumes that the first goods sold are the first that were available for sale. This method reflects the flow of goods for most businesses, in which left-over inventory consists of the last items the company purchased in the period. In a time of rising prices, however, this method can overstate earnings."

Vincent J. Love, *Understanding and Using Financial Data, An Ernst & Young Guide for Attorneys* 202, 200 (1992).

19) high dependence on cough and flu seasons which make predictions of growth highly speculative [¶ 51(k) ].

*Statements made at October 1993 Roadshows.*

Plaintiffs reallege numbers 1–7, 9 and add:

20) necessity of granting price discounts to retain market share [¶ 56(a) ], and

21) customers' reluctance to grant Perrigo more shelf space for fear of becoming too dependent upon Perrigo [¶ 56(d) ].

*Post–Offering Statements through January 14, 1993.*

Plaintiffs reallege numbers 1–7, 9, 21 and add:

22) earnings and revenue were artificially inflated in the first two quarters of fiscal 1994 due to increased revenues generated by sales promotions which had borrowed large sales from the last two quarters [¶ 74(a) ], and

23) no international prospects due to Wal–Mart's stated preference for regional suppliers [¶ 74(b) ].

*Statements through March 15, 1994.*

Plaintiffs reallege numbers 1–6, 9, 13, and 15–18.

*Statements of April 19 to May 9, 1994.*

Plaintiffs reallege numbers 1–7, 9, 11, and 15–18.

## II. *Standards of Review*

### A. Pleading a Short and Plain Statement

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(e) requires that "each averment of a pleading shall be simple, concise, and direct." The determination of whether a complaint complies with Rule 8 is made on a case by case basis based upon "the nature of the action, the relief sought, and the respective positions of the parties in terms of the availability of information." 5 Wright & Miller, Federal Practice and Procedure § 1217 (2d ed. 1990).

### B. Pleading Fraud with Particularity

Rule 9(b) of the Federal Rules of Civil Procedure provides:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Compliance with Rule 9(b) should be reviewed as to each of the elements of the claim of fraud in a complaint and as to each of the named defendants because each defendant must be informed of the specific nature of his alleged participation in allegedly defrauding a plaintiff. *See Sears v. Likens,* 912 F.2d 889, 893 (7th Cir.1990) (holding that a complaint may not lump all the defendants together, but must specify who was involved in each activity); *In re Consumers Power Co. Sec. Litig.,* 105 F.R.D. 583, 592–93 (E.D.Mich.1985). The pleading must be sufficiently particular to serve the three goals of Rule 9(b) which are (1) to provide a defendant with fair notice of the claims against him; (2) to protect a defendant from harm to his reputation or goodwill by unfounded allegations of fraud; and (3) to reduce the number of strike suits and fishing expeditions. *Vicom, Inc. v. Harbridge Merchant Servs., Inc.,* 20 F.3d 771, 777 (7th Cir.1994); *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987). In order to satisfy Rule 9(b), plaintiffs must allege: (1) the time, place and content of the alleged misrepresentation; (2) the fraudulent scheme; (3) the fraudulent intent of the defendants; and (4) the injury resulting from the fraud. *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 679 (6th Cir.1988).

The pleading requirements of Rule 9(b) "may be relaxed where information is only within the opposing party's knowledge." *Id.* at 680. In such circumstances, a plaintiff may plead upon "information and belief." Such allegations, however, must be accompanied by a statement of facts upon which the belief is founded. *Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). In this vein, plaintiffs

will be held to satisfy Rule 9(b) through reliance upon a presumption that the allegedly false and misleading "group published information" which forms the basis of a suit sounding in fraud is the collective action of corporate officers and directors. *In re Glen-Fed, Inc. Sec. Litig.*, 60 F.3d 591, 593 (9th Cir.1995). In other words, in a securities case where the allegedly false and misleading information is "conveyed in prospectuses, registration statements, annual reports, press releases, or other 'group-published information,' it is reasonable to presume that these are the collective actions of the officers." *Id.* Under these circumstances, a plaintiff is still required to plead the misrepresentations with particularity and where possible the roles of the individual defendants in the misrepresentations. *Id.*

■ Rule 9(b) also applies to § 11 and § 12(2) claims under the Securities Act to the extent they are grounded in fraud rather than negligence. *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 288 (3d Cir.1992), *cert. denied,* 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992); *In re Consumers Power*, 105 F.R.D. at 594.

## C. Standard for Dismissal for Failure to State a Claim

An action may be dismissed if the complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The moving party has the burden of showing that no claim exists. Although a complaint is to be liberally construed, it is still necessary that the complaint contain more than bare assertions of legal conclusions. *Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir.1993). All factual allegations in the complaint must be presumed to be true, and all reasonable inferences must be made in favor of the non-moving party. 2A James W. Moore, *Moore's Federal Practice*, ¶ 12.07[2.5] (2d ed. 1991). The Court need not, however, accept unwarranted factual inferences. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir.1987). Dismissal pursuant to Rule 12(b) is proper "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allega-

tions." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Dismissal is also proper if the complaint fails to allege an element necessary for relief or "if an affirmative defense or other bar to relief is apparent from the face of the complaint, such as the official immunity of the defendant...." 2A James W. Moore, *Moore's Federal Practice*, ¶ 12.07[2.5] (2d ed. 1991).

> In practice, "a ... complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory."

*Allard*, 991 F.2d at 1240 (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir.1988)).

## III. *Discussion*

### A. Form of the Complaint

In this particular case, this Court considers whether the form of a complaint conforms to the basic guidelines of Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure to be a question precedent to whether the allegations in the complaint manage to state an actionable claim. *See In re Buffets, Inc. Sec. Litig.*, 906 F.Supp. 1293, 1301 (D.Minn.1995) ("Deferring a ruling on a Rule 12(b)(6) motion allows the self-policing functions of the Rules of Civil Procedure to operate"). *But see Greenberg v. Compuware Corp.*, 889 F.Supp. 1012, 1015 (E.D.Mich. 1995) (court applied Rule 12(b)(6) first because it presents an easier standard for plaintiff to satisfy).

■ Although plaintiffs complain about the inherent tension between Rules 8(a) and 9(b), courts should try to harmonize and apply each rule. *Craighead v. E.F. Hutton & Co., Inc.*, 899 F.2d 485, 491 (6th Cir.1990). At least one court has suggested that the rules work in complementary fashion. *See In re Buffets*, 906 F.Supp. at 1299. In *Buffets,* the court maintained that because Rule 9(b) requires the plaintiff to particularize the allegations and eliminate the conclusory and argumentative verbiage in a complaint, the court and the parties are better able to recognize and analyze the claims before the

court. *Id.* at 1299. When applying Rules 8(a) and Rule 9(b) in conjunction, the court must normally require the pleader to "'state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud.'" *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1278 (D.C.Cir.1994) (quoting *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1385 (D.C.Cir.1981), *cert. denied*, 455 U.S. 999, 102 S.Ct. 1630, 71 L.Ed.2d 865 (1982)). "However, [to the extent] plaintiffs seek to base a claim of securities fraud on false and misleading projections or statements of optimism, their complaint must also plead sufficient facts that if true would substantiate the charge that the company lacked a reasonable basis for its projections or issued them in less than good faith." *Kowal*, 16 F.3d at 1278.

The problem presented by the Complaint is to discuss the coherent picture of fraud which plaintiffs seek to allege. *Cf. In re GlenFed Sec.Litig.*, 42 F.3d 1541, 1553–54 (9th Cir.1994) (dismissing complaint as a "puzzle" under Rule 8(a)). If one gives the plaintiffs the benefit of the doubt, the length of the Complaint could be attributable to plaintiffs' desire to set forth sufficient factual particularity under Rule 9(b).[12] A cynic might conclude that the length of the Complaint and the running together of statements of fact with alleged omissions was designed to throw up enough chaff to create confusion and enable plaintiffs to engage in wide ranging, expensive, and intrusive discovery to coerce a settlement from defendants. This Court's task is to determine whether there are viable claims for securities fraud alleged against all or some of the defendants and then to focus the parties upon the viable claims so that those claims can be resolved justly, speedily, and inexpensively. Fed.R.Civ.P. 1.

Regarding Rule 9(b), the Complaint *generally* sets forth its allegations of fraud with sufficient factual particularity regarding the time, place, and content of the alleged mis-

representations and omissions to put defendants on notice of the illegal course of conduct plaintiffs allege against them. *See* 5 Wright & Miller, Federal Practice and Procedure § 1296 (2d ed. 1990). Thus, this Court will decline to dismiss the entire case as a result of the length or complexity of the Complaint or the failure to allege fraud with sufficient factual particularity. The Court, however, will exercise its discretion under Fed.R.Civ.P. 12(f) to order stricken from the Complaint immaterial or redundant information in the name of efficiency. *See In re Clearly Canadian Sec.Litig.*, 875 F.Supp. 1410, 1416 (N.D.Cal.1995). Dismissing the Complaint without prejudice under Rule 8(a) would only invite the filing of a new complaint and a new round of motions to dismiss. *Id.* Furthermore, striking non-actionable, immaterial, and redundant matter from the Complaint should narrow the scope of discovery for the litigants.

In addition, where the Complaint fails to allege fraud with sufficient particularity against any of the individual defendants, this Court will dismiss those claims with prejudice. "After consolidation of the [two] lawsuits comprising this litigation, plaintiffs, represented by experienced and competent counsel, were given an adequate opportunity to file a new complaint setting forth their best theories in this case.... Given the high stakes in securities litigation, two bites at the apple are enough." *In re Exabyte Corp. Sec. Litig.*, 823 F.Supp. 866, 873 (D.Colo.1993); *see also In re VeriFone Sec. Litig.*, 784 F.Supp. 1471, 1486 (N.D.Cal.1992). This proposition is especially apt in the instant case because the Joint Report filed in accordance with this Court's Order of July 28, 1995, explicitly states that the Amended Complaint would be filed in order to allow plaintiffs to, among other things, clarify both the relationships of the defendants to the claims alleged against them and the relationship between the various representations and omissions.

---

**12.** In a case decided during the preceding year, the Eastern District of Michigan dismissed a class action securities case for failure to set forth a sufficient factual basis to satisfy either Rule 12(b)(6) or 9(b) in which the plaintiffs' counsel in the instant case had served as co-counsel for plaintiffs. *See Greenberg v. Compuware Corp.*, 889 F.Supp. 1012 (E.D.Mich.1995).

## B. Reviewing the Complaint

Plaintiffs argue that it is inappropriate for a court to engage in "atomistic consideration" of the specific statements and omissions alleged in the Complaint when resolving a motion to dismiss. Courts have declined to engage in such consideration in other cases, choosing instead to determine whether defendants' representations, when read as a whole and in context, may have worked as devices designed to mislead investors. *See, e.g., McMahan & Co. v. Wherehouse Enter., Inc.,* 900 F.2d 576, 579 (2d Cir.1990), *cert. denied,* 501 U.S. 1249, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991); *S.E.C. v. C.R. Richmond & Co.,* 565 F.2d 1101, 1106–07 (9th Cir.1977) (statements literally true may be misleading in their overall effect). However, where plaintiffs file claims against multiple defendants this Court is obliged to go through the Complaint allegation by allegation in order to determine if the claims are properly and specifically alleged against each named defendant. This is no easy task, but it would be manifestly unjust to require defendants against whom no actionable claim has been asserted to undergo the expense and discomfort that the discovery process imposes simply because plaintiffs have asserted actionable claims against different defendants. It is certainly not uncommon for a court presiding over a comparable securities case·to engage in precisely the type of atomistic consideration opposed by plaintiffs. *See, e.g., In re Gupta Corp. Sec. Litig.,* 900 F.Supp. 1217 (N.D.Cal.1994); *In re Clearly Canadian Sec. Litig.,* 875 F.Supp. 1410 (N.D.Cal.1995); *In re Medimmune, Inc. Sec. Litig.,* 873 F.Supp. 953 (D.Md.1995); *In re Marion Merrell Dow Inc., Sec. Litig. (II),* 1994 WL 396187 (W.D.Mo., July 18, 1994); *In re Ross Sys. Sec. Litig.,* 1994 WL 583114 (N.D.Cal., July 21, 1994).

As an initial matter, the Complaint is replete with statements made by defendants which concern nothing but Perrigo's past or current performance. (*See, e.g.,* Complaint at ¶¶ 28, 30, 36, 52, 60, 62, 63, 79, 85.) Plaintiffs do not dispute the accuracy of these statements. In and of themselves, these statements are not actionable as being materially misleading because they are not mis-

leading at all. *Greenberg,* 889 F.Supp. at 1017; *see Serabian v. Amoskeag Bank Shares, Inc.,* 24 F.3d 357, 361 (1st Cir.1994). Making a historically accurate statement does not fraudulently create the impression that such conditions will occur in the future. *Cione v. Gorr,* 843 F.Supp. 1199, 1205 (N.D.Ohio 1994) ("to argue that the statements are misleading because the true statements of past performance somehow paint a falsely optimistic picture of the future reaches too far"). In fact, accurate statements concerning Perrigo's recent growth, standing alone, are evidence that projections of future growth were reasonable when made. Plaintiffs' case hinges on the alleged material omissions, which are alleged to demonstrate that the projections were either not made in good faith or lacked a reasonable basis in fact. Furthermore, this Court must reject plaintiffs' assertion that accurate statements of fact may be actionable when transmitted to the public embedded in a series of falsehoods. While plaintiffs correctly note that "a misleading statement will not always lose its deceptive edge simply by joinder with others that are true," *Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 1097, 111 S.Ct. 2749, 2760, 115 L.Ed.2d 929 (1991), lumping a number of historically accurate statements in with a number of allegedly misleading predictions does not render the accurate statements untrue.

Rather, to the extent defendants are alleged to have harped on Perrigo's past success in connection with predictions of future growth, the viability of these claims is entirely contingent upon the allegedly misleading economic projections themselves. (*See, e.g.,* Complaint at ¶¶ 37–39, 45, 47, 49, 50.) Thus, in parsing through the Complaint, this Court will not focus on accurate statements of fact, but will focus instead on the allegedly misleading predictions of economic growth and the allegedly material omissions upon which plaintiffs depend to make their case.

As a means of facilitating its analysis, this Court will initially determine whether the predictions or material omissions attributed to defendants can form the basis for liability. Only after the Court concludes that the Complaint alleges a factual basis for liability will

the Court determine if the allegations set forth in the Complaint were pled with sufficient particularity as to each defendant.

## C. Statute of Limitations Arguments

The main Hillman defendants, except Henry Hillman and C.G. Grefenstette, and defendant Swaney Associates claim that they should be dismissed because they were not named as defendants until the statute of limitations had run under both the Exchange and Securities Acts. This Court will address this issue prior to addressing the form and substance of the Complaint because if plaintiffs' claims are time-barred as to these defendants, the Court need not investigate the claims alleged in the Complaint.

■■■ A claim under both the Exchange and Securities Acts "must be commenced within one year after the discovery of the facts constituting the violation and within three years after such violation." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 364, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991). While plaintiffs concede that the statute of limitations begins to run under the Securities Act when plaintiffs are placed on "inquiry notice" of the facts giving rise to the action, they contend that "actual notice" is required to get the clock ticking under the Exchange Act. Their argument is not supported by recent case law. Appellate courts hold plaintiffs to an inquiry notice standard under the Exchange Act as well. *See, e.g., Tregenza v. Great American Communications Co.,* 12 F.3d 717, 718 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1837, 128 L.Ed.2d 465 (1994); *Menowitz v. Brown,* 991 F.2d 36, 41–42 (2d Cir.1993); *Anixter v. Home–Stake Prod. Co.,* 947 F.2d 897, 899 (10th Cir.1991), *vacated on other grounds,* 503 U.S. 978, 112 S.Ct. 1658, 118 L.Ed.2d 382 (1992), *cert. denied,* 507 U.S. 1029, 113 S.Ct. 1841, 123 L.Ed.2d 467 (1993); *Howard v. Haddad,* 962 F.2d 328, 330 (4th Cir.1992). Inquiry notice is defined as the time "when the victim of the alleged fraud became aware of facts that would have led a reasonable person to investigate whether he might have a claim. . . ." *Tregenza,* 12 F.3d at 718.

■■■ In attempting to set a date for when plaintiffs were put on inquiry notice, defendants attach particular significance to a *Barron*'s article, dated January 31, 1994, which posited that Perrigo stock may be overvalued. Defendants also direct this Court's attention to the drop of $6.25 in the price of Perrigo stock on March 15, 1994, which followed Perrigo's conference with analysts wherein a number of facts which had a negative impact on Perrigo's business were disclosed. In contrast, plaintiffs claim that they were not put on inquiry notice until May 10, 1994, when Perrigo issued a press release reporting its third quarter fiscal results, the stock price plunged $8.75 a share, and financial analysts began to question the credibility of the company.

The statute of limitations is an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their Complaint. *Tregenza,* 12 F.3d at 718 (citing *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980)); *see* Fed.R.Civ.P. 8(c). Thus, defendants bear the burden of proof on this issue. This Court holds that there is a genuine and material question of fact about whether a reasonable investor would have been put on inquiry notice on March 15, 1994, as defendants claim. As such, this issue could not be resolved upon a motion for summary judgment and is therefore inappropriate for the Court to address when faced with a motion to dismiss. *See Nevada Power Co. v. Monsanto Co.,* 955 F.2d 1304, 1307 (9th Cir.1992). Defendants' arguments concerning the impropriety of a "lulling" defense—that plaintiffs were subsequently lulled into a state of repose by defendants' explanations and bullish reports—are, therefore, premature because it is not yet resolved as to whether plaintiffs were put on inquiry notice in the first instance by the events noted by defendants. Because defendant Swaney Associates and the main Hillman defendants, except the Harry L. Hillman Trust and Elsie Hillman, were named in the complaint dated May 10, 1995—within one year after the date plaintiffs admit they were put on notice of their claims—these claims are not barred by the statute of limitations.

With regards to the Henry L. Hillman Trust and one of its trustees, defendant Elsie Hillman, neither was named prior to the Complaint filed on September 22, 1995—a date fully 16 months after plaintiffs admitted they were put on inquiry notice of their claims. However, Rule 15(c)(3) of the Federal Rules of Civil Procedure allows for the substitution of parties where the original party was named due to mistaken identity. At oral argument held March 13, 1996, plaintiffs argued that these defendants were substituted for Juliet Challenger, Inc., a wholly owned subsidiary of the Hillman Company, which is in turn owned and controlled by the Henry L. Hillman Trust. (Transcript at 44–47.) Juliet Challenger, Inc., was named as a "nominal" defendant in the Amended Complaint; there are no present allegations that this company violated the securities laws. Plaintiffs also contended at oral argument that they have yet to fully understand the true nature of the relationship between the various Hillman entities. (Transcript at 46.) While defendants question the veracity of plaintiffs' assertions of ignorance, this Court will accept plaintiffs' assertions as true. This Court will allow plaintiffs' substitution of parties pursuant to Rule 15(c).

Thus, the claims against the main Hillman defendants and defendant Swaney Associates are not time-barred as a matter of law.

### D. Count I: Section 10(b) and Rule 10b–5 "Fraudulent Scheme" Claims

In Count I of the Complaint, plaintiffs allege that the Perrigo defendants, defendant Swaney Associates, the main Hillman defendants, and the Underwriter defendants violated § 10(b) of the Exchange Act and Rule 10b–5 promulgated thereunder by: (1) participating in a scheme to defraud; (2) making untrue statements of material fact or omitting to state material facts necessary to render the statements made not misleading; or (3) engaging in acts or business practices which operated as a fraud in connection with plaintiffs' respective purchases of Perrigo common stock during the class period. (Complaint at ¶ 103.)

Section 10(b) of the Exchange Act makes it unlawful to use or employ, in connection with the purchase or sale of securities, any "manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe...." Section 10(b) was designed as a "catchall clause to prevent fraudulent practices." *Chiarella v. United States*, 445 U.S. 222, 226, 100 S.Ct. 1108, 1113, 63 L.Ed.2d 348 (1980). Pursuant to § 10(b), the SEC adopted Rule 10b–5. *Smith v. American Nat. Bank & Trust Co.*, 982 F.2d 936, 942–43 (6th Cir.1992). Rule 10b–5 makes it unlawful, in connection with the purchase or sale of any security "(a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." 17 C.F.R. § 240.10b–5.

### 1. Distinguishing Primary Liability from Secondary Liability

The Supreme Court has held that secondary liability for aiding and abetting a violation of § 10(b) does not exist. *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). The Supreme Court also held, however, that peripheral actors in the securities markets may be subject to primary liability under the section when it said, "[a]ny person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b–5, assuming all of the requirements for primary liability under Rule 10b–5 are met." *Central Bank*, 511 U.S. at ——, 114 S.Ct. at 1455. "The critical element separating primary from aiding and abetting violations is the existence of a representation, either by statement or omission, made by the defendant, that is relied upon by the plaintiff. Reliance only on representations made by others cannot itself form the basis of liability." *Anixter*

*v. Home–Stake Production Co.,* 77 F.3d 1215, 1225 (10th Cir.1996) (citing *Central Bank,* 511 U.S. at ——, 114 S.Ct. at 1448); *see also O'Neil v. Appel,* 897 F.Supp. 995, 999 (W.D.Mich.1995) ("Section 10(b) liability may be incurred only by the one who actually makes a material misstatement").

█ This Court holds that those post-*Central Bank* decisions which have held that a third-party defendant may be held liable for materially misleading statements made by others where the defendant "substantially participated" in preparing the statements do not comport with *Central Bank* insofar as these cases reformulate the "substantial assistance" element of aiding and abetting liability into primary liability and allow liability to attach without requiring a representation to be made by defendant. *Anixter,* 77 F.3d at 1226 n. 10. (citing *In re Software Toolworks, Inc.,* 50 F.3d 615, 628 n. 3 (9th Cir. 1994) (accountant may be primarily liable based on "significant role" in drafting letter client sent to SEC), *cert. denied,* —— U.S. ——, 116 S.Ct. 274, 133 L.Ed.2d 195 (1995); *In re ZZZZ Best Sec. Litig.,* 864 F.Supp. 960, 970 (C.D.Cal.1994) (accounting firm that was "intricately involved" in creating false documents published by client is a primary violator); and *Cashman v. Coopers & Lybrand,* 877 F.Supp. 425, 432–34 (N.D.Ill.1995) (primary liability attaches where accountant charged with playing a "central role in the drafting and formation of the alleged misstatements" that were incorporated into prospectus)).

█ However, it must be noted that the alleged violator need not directly communicate misrepresentations to plaintiffs for primary liability to attach. *Anixter,* 77 F.3d at 1226 (citing *SEC v. Holschuh,* 694 F.2d 130, 142 (7th Cir.1982) ("actual or first-hand contact with offerees or buyers [is not] a condition precedent to primary liability for antifraud violations")). A third-party defendant may be held liable as a primary violator for the materially misleading statements made by others where the third-party defendant controlled the content of the statement. *See Greenberg,* 889 F.Supp. at 1020–21 (discussing a company's potential liability for independent analyst reports). When a defendant

controls the content of another actor's statement, the actor is essentially operating as the agent of the defendant, unlike the situation wherein a defendant provides "substantial assistance" in aiding the actor's individual course of conduct. Furthermore, primary liability will attach where an actor "knew or should have known that his representation would be communicated to investors because § 10(b) and Rule 10b–5 focus on fraud made 'in connection with the sale or purchase' of a security." *Anixter,* 77 F.3d at 1226. In such circumstances, it was the defendant's original statement which misled investors—the person who communicated the statement to investors served as a mere conduit for defendant's statement. The key to determining primary liability is that plaintiff must allege that defendant was the original and knowing source of the misrepresentation.

█ The Underwriter defendants claim that they should be dismissed as parties to this case because *Central Bank* bars liability for mere participation in a conspiracy or scheme. This claim is rejected. The Complaint alleges that the Underwriters are liable for making materially misleading representations in the form of baseless predictions of growth for Perrigo in their reports to the public. (*See, e.g.,* Complaint at ¶¶ 41–43, 46, 59, 61, 69, 70, 72, 73, 77, 89, 90, 91.) In each instance, the Underwriter defendants were not alleged to have merely assisted the Perrigo defendants in making an alleged misrepresentation, nor were the Underwriter defendants alleged to have served as mere "mouthpieces" for Perrigo's statements, nor was any individual statement made by an Underwriter controlled by Perrigo. At most, the Underwriter defendants are alleged to have received the information contained in their fraudulent public statements from Perrigo. However, whatever information was received from Perrigo was invariably edited or incorporated in a broader analysis by the Underwriter defendant in question. As such, the Underwriter defendants are consistently alleged to have been the original source of each statement, even if the information upon which these allegedly fraudulent predictions of growth was obtained from Perrigo. Because the Underwriter defendants are al-

leged to be the original source of each alleged material misrepresentation, they may be held primarily liable for securities fraud under *Central Bank.* As a consequence, Perrigo may not be held primarily liable for any predictions of future growth made by the Underwriter defendants under Count I. The "close communications" between the Perrigo and Underwriter defendants that plaintiffs claim is alleged in the Complaint does not give rise to an inference of control over any particular statement.[13] (*See* Docket # 96, at 96.)

## 2. The Prima Facie Case

In order to state a primary liability claim for securities fraud in violation of section 10(b) and Rule 10b–5, the following elements must be alleged against the defendant with the specificity required by Federal Rule of Civil Procedure 9(b):

(1) a misstatement or omission,

(2) of a material fact,

(3) made with scienter,

(4) justifiably relied on by plaintiff, which

(5) was causally related to plaintiff's injury.

*In re Royal Appliance Sec. Litig.,* 64 F.3d 663, 1995 WL 490131, at * 2–3 (6th Cir. Aug. 15, 1995) (citing *Malone v. Microdyne Corp.,* 26 F.3d 471, 476 (4th Cir.1994)). Regarding the fourth element, where plaintiff alleges a "fraud on the market" theory, reliance will be presumed. *See Basic Inc. v. Levinson,* 485 U.S. 224, 247, 108 S.Ct. 978, 992, 99 L.Ed.2d 194 (1988). In the instant suit, justifiable reliance will be presumed because plaintiffs have in fact advanced a "fraud on the market" theory. (Complaint at ¶ 10.) The remaining elements are discussed below.

### a. *Misleading Statements*

Plaintiffs have alleged in their Complaint that defendants made—or caused to be made—numerous statements predicting growth for Perrigo which were either false or unreasonable when made. (Complaint at ¶¶ 31, 32, 34, 35, 37–39, 41–47, 49–50, 53–55, 57–59, 61, 64–73, 75, 77, 78, 80, 81, 83, 84, 86, and 88–91.) As factual support for this proposition, plaintiffs have alleged that defendants omitted a number of material facts with respect to adverse economic conditions known to defendants which undermined their predictions of growth. (Complaint at ¶¶ 29, 33, 40, 51, 56, 74, 82, 87, and 92.)

"Silence, absent a duty to disclose, is not misleading under Rule 10b–5." *Basic,* 485 U.S. at 239 n. 17, 108 S.Ct. at 987 n. 17. However, "[w]hen a corporation chooses to disclose information, it must reveal any information in its possession necessary to render the disclosure not misleading." *In re Clearly Canadian Sec. Litig.,* 875 F.Supp. 1410, 1418 (N.D.Cal.1995) (citing *In re Apple Computer Sec. Litig.,* 886 F.2d 1109, 1113 (9th Cir. 1989), *cert. denied,* 496 U.S. 943, 110 S.Ct. 3229, 110 L.Ed.2d 676 (1990)). Thus, defendants' duty to disclose all material information under 10(b) was only triggered when they made projections of Perrigo's future performance. At paragraph 29 of the Complaint, plaintiffs charge defendants with certain material omissions where defendants had made no prior economic projections. The May 11, 1993, press release referred to in this paragraph merely refers to past performance. Thus, because defendants had not triggered their duty to disclose all material information, these "pure" omissions are not actionable.

### b. *Materiality*

Whether or not a statement or omission is material is determined with reference to whether there is a substantial likelihood that the statement or omission would be viewed by the reasonable investor as having significantly altered the total mix of available information. *Basic,* 485 U.S. at 231–32, 108 S.Ct. at 983. In a fraud on the market case, plaintiffs are assumed to have relied on the stock price established by the market rather than on any individual statements made by corporate insiders. *In re Apple Computer,* 886 F.2d at 1114; *see also Basic,* 485 U.S. at

---

**13.** The control over a specific third-party statement needed to establish primary liability under § 10(b) is not the equivalent of the degree of control over an actor needed to establish "control person" liability under § 15 of the Securities Act or § 20(a) of the Exchange Act, the subject of Counts V and VIII of the Complaint.

247, 108 S.Ct. at 992 (holding that a plaintiff's reliance on the market would be presumed). Thus, where plaintiff alleges fraud on the market, "the materiality requirement of Rule 10b–5 judges a statement in light of the total mix of information available to the market." *In re Clearly Canadian,* 875 F.Supp. at 1419; *cf.* 3 Alan R. Bromberg & Lewis D. Lowenfels, Bronmberg and Lowenfels on Securities Fraud & Commodities Fraud § 8.3 (2d ed. 1994) (distinguishing materiality in direct-personal sales cases with materiality in an open-market context). Materiality is a mixed question of law and fact and is appropriately decided as a matter of law if reasonable minds could not differ on the issue. *TSC Indus., Inc. v. Northway, Inc.,* 426 U.S. 438, 449–50, 96 S.Ct. 2126, 2132–33, 48 L.Ed.2d 757 (1976). In making its determination, the court should balance the probability that the predicted event will occur, with the magnitude of the event and the nature of the statement. *Basic,* 485 U.S. at 238, 108 S.Ct. at 987; *Sinay v. Lamson & Sessions Co.,* 948 F.2d 1037, 1040 (6th Cir.1991).

 There are specific types of statements and omissions which are considered not to be material as a matter of law. As an initial matter, where the allegedly false statements are worded as vaguely optimistic predictions of growth, they are not material as a matter of law. *Raab v. General Physics Corp.,* 4 F.3d 286, 289–90 (4th Cir.1993).[14] Such statements are considered "mere puffery" upon which no reasonable investor would rely. *Id.* Statements which are generally not considered mere puffery include predictions worded as guarantees or predictions supported by specific factual assertions. Combining puffery with accurate historical statements does not render puffery material. This Court holds that the following allegations are mere puffery because they are vague optimistic assertions made without any specific factual support. (Complaint at ¶¶ 32, 35, 37, 38, 64, 75, and 80.)

 If a prediction is not mere puffery, it becomes necessary to apply the "Bespeaks Caution" doctrine. Under this doctrine, a potentially material economic prediction is rendered not material when it is accompanied by sufficient cautionary language. *Mayer v. Mylod,* 988 F.2d 635, 639 (6th Cir.1993); *Sinay,* 948 F.2d at 1040. However, it must be noted that "not every mixture with the true will neutralize the deceptive. If it would take a financial analyst to spot the tension between the one and the other, whatever is misleading will remain materially so, and liability should follow." *Virginia Bankshares, Inc. v. Sandberg,* 501 U.S. 1083, 1097, 111 S.Ct. 2749, 2760, 115 L.Ed.2d 929 (1991). In this vein, a boilerplate disclaimer that merely "warns the reader that the investment has risks will ordinarily be inadequate to prevent misinformation. To suffice, the cautionary statements must be substantive and tailored to the specific future projections, estimates or opinions ... which the plaintiffs challenge."

**14.** Plaintiffs have argued that *Raab,* a case upon which defendants rely heavily, is inconsistent with the Sixth Circuit's decision in *Mayer v. Mylod,* 988 F.2d 635, 639 (6th Cir.1993). *Raab's* holding that "loose [economic] prediction[s]," as mere puffery, are not material as a matter of law is not inconsistent with *Mayer's* holding that economic predictions which were "not truly believed and not supported by available facts" are potentially actionable. *Raab,* 4 F.3d at 290; *Mayer,* 988 F.2d at 639. If a prediction is in the nature of mere puffery, it matters not whether it was a bald-faced lie or an honestly-held conviction because no reasonable investor would rely upon it. *See Virginia Bankshares,* 501 U.S. at 1096, 111 S.Ct. at 2760 (holding that subjective falseness alone cannot provide a basis for liability). However, it is also clear that many economic predictions are not mere puffery. *Id.* at 1093, 111 S.Ct. at 2758. Only in such circumstances does *Mayer's* rule of law become applicable.

District courts within the Sixth Circuit have cited both cases with approval. *See, e.g., Greenberg,* 889 F.Supp. 1012 (W.D.Mich.1995); *Cione v. Gorr,* 843 F.Supp. 1199, 1204–05 (N.D.Ohio 1994). In *Cione,* the court found that *Raab* rather than *Mayer* "speaks directly to the materiality issue" where "defendants are alleged to have made true statements about past performance in conjunction with general forecasts of future success," which is precisely the issue at bar. *Id.* at 1204–05. Of greater importance, the Sixth Circuit has harmonized *Raab* and *Mayer* on at least one occasion. *See In re Royal Appliance Sec. Litig.,* 64 F.3d 663, 1995 WL 490131 (6th Cir. Aug. 15, 1995). While *In re Royal Appliance* is an unpublished decision, this Court does not cite the opinion for the purposes of setting forth a legal standard which is new to the Sixth Circuit. Rather, *In re Royal Appliance* simply stands for the proposition that this Court believes—that *Raab* and *Mayer* are not inconsistent cases.

*In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 371–72 (3d Cir.1993), *cert. denied*, 510 U.S. 1178, 114 S.Ct. 1219, 127 L.Ed.2d 565 (1994). Application of this doctrine requires the court to assess the communications at issue on a point-by-point basis. *Id.*

■ In the context of defending against plaintiffs' claims under §§ 11 and 12(2) of the Securities Act, the Underwriter defendants argue that because the Prospectus contained language warning potential investors that the market for Perrigo's products is highly competitive, none of the statements in the Prospectus relating to Perrigo's future performance in the OTC market are actionable. (*See* Complaint at ¶¶ 57, 58.) This Court disagrees. General language concerning the highly competitive nature of the market is not tailored to any specific projections of growth and as such, amounts to nothing more than a boilerplate warning. As a result, this warning will not insulate defendants from liability under Count I for any materially misleading omissions or statements.

■ Finally, misrepresentations are not material if the investors have knowledge of the truth. *Basic*, 485 U.S. at 231–32, 108 S.Ct. at 983–84. In a case where plaintiffs allege fraud on the market, "the defendant's failure to disclose material information may be excused where the information has been made credibly available to the market by other sources." *In re Apple Computer*, 886 F.2d at 1115. While it normally does not matter if the market is aware of certain facts if the plaintiff remains unaware, where a plaintiff alleges fraud on the market he is implicitly asserting reliance on the integrity of the market. *In re Convergent Technologies Sec. Litig.*, 948 F.2d 507, 512 n. 2 (9th Cir.1991); *In re Clearly Canadian*, 875 F.Supp. at 1418–19; *see In re Apple Computer*, 886 at 1114. The market may be assumed to be aware of general economic trends, regulatory matters, competition, and other publicly-available information. *Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509, 515 (7th Cir.1989); *see In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1419 (9th Cir.1994) (competition), *cert. denied sub nom.* —— U.S. ——, 116 S.Ct. 185, 133 L.Ed.2d

123 (1995); *Basic*, 485 U.S. at 246, 108 S.Ct. at 991 ("Recent empirical studies have tended to confirm Congress' premise that the market price of shares traded on well-developed markets reflects all publicly available information...."); *cf. In re Leslie Fay Co. Sec. Litig.*, 871 F.Supp. 686, 694–95 (S.D.N.Y. 1995) (Rule 10(b)'s "in connection with" requirement encompasses all SEC filings, even those not readily available to the investing public). However, the Ninth Circuit has held that because the investing public places a heavy emphasis on the pronouncements of corporate insiders, when corporate insiders seek to insulate themselves from liability for allegedly false or misleading representations (or omissions) through a "truth on the market defense," the insiders must demonstrate that the truth was transmitted to the public "with a degree of intensity and credibility sufficient to effectively counter-balance any misleading impression created by the insiders' one-sided representations." *In re Apple Computer*, 886 F.2d at 1116.

■ This Court holds as a matter of law that, where information is contained in a document filed with the SEC, the market has knowledge of such matters. *Cf. In re Leslie*, 871 F.Supp. at 694–95; *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996) (court may take judicial notice of the content of statements contained in documents filed with the SEC, but not the truth of such statements). This Court believes that it is incongruous, in a fraud on the market case, to hold that the investing public knows of allegedly false omissions or statements in SEC filings but does not know of the accurate information in SEC filings. Thus, because Perrigo disclosed the costs of its raw materials in its Prospectus for its October 1993 public offering, the financial market will be held to be aware of Perrigo's raw material costs (alleged omission # 1).

■ Moreover, this Court holds that the total mix of information available in the market to a reasonable investor also includes an understanding of the competitive nature of the American economy. The market knows that there are general inflationary pressures on raw materials and on wages. The market

knows that large companies, such as Proctor & Gamble and the major drug manufacturers, would not sit by and permit Perrigo to deprive them of profits with its private label manufacturing and marketing. The market knows that these companies fight back by developing new products, manufacturing private brands themselves, competing for shelf space, giving discounts to meet competition, utilizing sophisticated advertising, etc. The market knows that persons with capital observing success of a private brand manufacturer often seek a piece of the action for themselves. The market knows that the principal customers of Perrigo would not be so naive as to become totally dependent upon Perrigo for its store name brands. The market knows that the huge retailers such as Wal–Mart would get as much out of Perrigo as they could in the form of price cuts, quality packaging, marketing assistance, quantity discounts, just-in-time delivery, inventory financing, etc. The market knows that the marketing pressure on Perrigo would and will, in all respects, grow, as Perrigo has grown and will, perhaps, grow. A person relying upon the market knows that the market (increasingly influenced by professional managers of huge mutual funds and pension plans, the people who are supposedly reading all of these press releases and SEC filings) takes all of these facts into consideration and applies common sense (reason) to these facts.[15]

■ Accordingly, those alleged omissions which relate to general market conditions are held to be known to the market and thus not actionable, even under the Ninth Circuit's high standard for "truth on the market" defenses where a corporate insider attempts to actively mislead the public. *See In re Apple Computer,* 886 F.2d at 1116. These alleged omissions are the increasing expense of maintaining Perrigo's market share (# 2),[16] "retail consolidation, shrinking shelf space, and expanded competition" (# 3), increased inventory risk (# 4), the gross margin risk due to customer demands that Perrigo assist in marketing (# 5), analgesic market risk (# 6), companies switching from the prescription to the OTC market (# 7), price cuts by name brand manufacturers (# 9), entry into store market by name brand manufacturers (# 10), resistance by customers to expansion by Perrigo (# 11), the threat of unfair competition lawsuits (# 14), necessity of granting price discounts to major retail customers to retain Perrigo's market share (# 20), and Perrigo's major customers' reluctance to grant Perrigo more shelf space for fear of becoming too dependent upon Perrigo (# 21).

This Court holds that certain other alleged omissions are immaterial as a matter of law simply because no reasonable investor would consider them to significantly alter the total mix of information available to him. *See Basic,* 485 U.S. at 231–32, 238, 108 S.Ct. at 983–84, 986. These alleged omissions include the threat of new regional store brand companies (# 12), SKU pairing by major retail customers to reduce inventories (# 16), and the threat to vitamin sales posed by proposed FDA rules (# 17).

■ This Court discerns certain omissions alleged in the Complaint may be found to be material omissions—some singly and some only in combination with others listed. These potentially material omissions are the failure to disclose: Perrigo's lack of plans to invest more money in fiscal 1994 (# 8);[17] encouragements to customers to stockpile inventory (# 13); the declining purchases by main retail customers (# 15); the hidden cost increases due to a change from the LIFO to

---

**15.** Some commentators would classify the "truth on the market" defense as a rebuttal to the market presumption of reliance. *See, e.g.,* 2 Thomas L. Hazen, *The Law of Securities Regulation* § 13.5B (2d ed. 1995). This Court, however, believes that the existence of truthful information in the market bears on whether the misstatements or omissions were material in light of the total mix of information available. *See Id.* at § 13.5A.

**16.** The parenthetical numbers refer to the numbering scheme listed on pages 4–6 of this Opinion.

**17.** Perrigo's 1993 Annual Report affirmatively stated with regards to capital expenditures that the company "expect[ed] to invest even more in fiscal 1994," thereby creating the reasonable expectation that Perrigo would follow its avowed intentions.

the FIFO system of accounting (# 18);[18] that artificially inflated earnings and revenue figures had resulted from the first two quarters of fiscal 1994 due to increased revenues generated by sales promotions which had borrowed large sales from the last two quarters (# 22); and the lack of international prospects due to Wal–Mart's stated preference for regional suppliers (# 23). These material omissions arguably could have misled the investing public into believing that Perrigo was going to continue growing in sales and profits for a period of time.

### c. Scienter

▮ Scienter is defined as "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668 (1976). The Sixth Circuit has held with reference to a § 10(b) claim that scienter includes the concept of recklessness. *Auslender v. Energy Mgmt. Corp.*, 832 F.2d 354, 356 (6th Cir.1987); *see O'Neil v. Appel*, 897 F.Supp. 995, 1001 (W.D.Mich.1995). In this context, "recklessness" is defined as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it." *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1025 (6th Cir.1979). With respect to scienter, Rule 9(b) provides that allegations of "condition of mind ... may be averred generally."

▮ While the Sixth Circuit has not spoken directly to the issue, other circuits have set forth a variety of standards regarding the scienter requirement. *See, e.g., Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir.1995) (facts alleged must give rise to "strong inference" that defendants possessed fraudulent intent); *Serabian v. Amoskeag Bank Shares, Inc.*, 24 F.3d 357, 361 (1st Cir.1994) (facts alleged must "make it reasonable to believe that defendants knew that a statement was materially false or misleading"); *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547–49 (9th Cir.1994) (plaintiffs

may aver scienter generally by simply declaring that scienter existed). Because the plain language of Rule 9(b) exempts "conditions of the mind" from its particularity requirement, this Court believes that the Ninth Circuit has set forth the correct standard.

▮ However, Rule 9(b) also expressly states that "the circumstances constituting fraud or mistake shall be stated with particularity." A plaintiff will therefore not survive a Rule 9(b) motion to dismiss on the pleadings by simply alleging that a defendant had fraudulent intent. *See GlenFed*, 42 F.3d at 1548 ("To allege fraud with particularity, a plaintiff must set forth more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false."); *see also DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990) (plaintiffs must plead "the who, what, when, where, and how: the first paragraph of any newspaper story"), *cert. denied*, 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990). To the extent plaintiffs allege that defendants made materially misleading economic predictions, the plaintiffs must allege particularized facts demonstrating that these predictions were either false or lacked a reasonable basis when made. *See Arazie v. Mullane*, 2 F.3d 1456, 1467 (7th Cir.1993). Only if plaintiffs are able to plead the facts underlying the alleged fraud with sufficient particularity, are "allegations of motive and opportunity in the complaint [ ] sufficient to establish a basis for inferring [defendants'] fraudulent intent." *In re Wells Fargo Sec. Litig.*, 12 F.3d 922, 931 (9th Cir.1993), *cert. denied*, — U.S. ——, 115 S.Ct. 295, 130 L.Ed.2d 209 (1994).

In the instant suit, plaintiffs have averred fraud generally with respect to all of the defendants by stating that they engaging in their allegedly fraudulent course of conduct "knowingly or recklessly." (Complaint at ¶ 103.) Whether the facts underlying the fraud were pled with particularity with respect to each defendant will be addressed shortly.

---

18. Although Perrigo disclosed the switch in accounting methods to the market in its 1993 Annual Report, the change may still have been used to mask the other material omissions.

### d. *Causation*

█ In order to state a claim using a fraud on the market theory under rule 10b–5, plaintiffs must allege "loss causation," i.e., that defendants' material misrepresentations or omissions actually caused plaintiffs' injury. To adequately plead loss causation, plaintiffs may allege that the price of Perrigo common stock was artificially inflated by defendants' materially misleading statements when plaintiffs made their respective purchases. *Scattergood v. Perelman*, 945 F.2d 618, 624 (3d Cir.1991) (plaintiffs adequately pled loss causation by alleging that "the market price paid by the plaintiffs exceeded the value of the stock at the time of purchase based on the true facts"); *In re Clearly Canadian*, 875 F.Supp. at 1419. Plaintiffs have met this minimal burden. The Complaint clearly alleges that defendants' fraud caused plaintiffs' economic injury in its very first page. (*See* Complaint at 1.) Whether each alleged misstatement could have actually been the cause in fact of the price of Perrigo stock is a question properly reserved for a motion for summary judgment or a jury verdict.

### 3. Reviewing the Specific Allegations in the Complaint Under Fed.R.Civ.P. 9(b)

#### a. *Allegations Common to Many Defendants*

█ A few allegations may be reviewed without referring to specific defendants. For example, the Complaint frequently alleges that defendants gave misleading information to independent third parties, such as newspapers or unaffiliated financial analysts, which formed the basis for the third party's misleading public statements concerning Perrigo's business. (*See* Complaint at ¶¶ 31,[19] 34, 44, 45, 53, 54, 66, 71, 78, 81, 84, 86, and 88.) As stated earlier, defendants may be held primarily liable for third-party accounts which simply passed along material misrepresentations without editing them if defendants knew that their comments were not going to be edited. *See* Opinion, *supra*, at Part III.D.1 (citing *Anixter v. Home–Stake Production Co.*, 77 F.3d 1215, 1225–26 (10th Cir.1996)). Furthermore, defendants may be held liable for misleading third-party accounts if defendants controlled the content of the accounts. *Id.* Only by exercising such control would defendants become sufficiently "entangled" with the third-party accounts for liability to attach. *See Greenberg v. Compuware Corp.*, 889 F.Supp. 1012, 1020–21 (E.D.Mich.1995) (harmonizing the "entanglement theory" presented in *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 163 (2d Cir. 1980) with the "control theory" espoused in *Raab v. General Physics Corp.*, 4 F.3d 286, 289 (4th Cir.1993)); *In re Gupta Corp. Sec. Litig.*, 900 F.Supp. 1217, 1237 (N.D.Cal.1994).

█ Under Rule 9(b), statements made originally by independent market analysts are not actionable unless a plaintiff can plead with particularity who among defendants supplied the information, how it was supplied, and how defendants could have controlled the content of the statement. *Raab*, 4 F.3d at 288; *see In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 265–66 (2d Cir.1993), *cert. denied sub nom.* —— U.S. ——, 114 S.Ct. 1397, 128 L.Ed.2d 70 (1994). Otherwise, a statement "could be taken out of context, incorrectly quoted, or stripped of important qualifiers." *Raab*, 4 F.3d at 288. This rule also applies with respect to newspaper accounts. *In re Medimmune, Inc. Sec. Litig.*, 873 F.Supp. 953, 965 (D.Md.1995); *see Ferber v. Travelers Corp.*, 785 F.Supp. 1101, 1108 (D.Conn.1991) ("The strictures of Rule 9(b) are not satisfied by indirect quotes from a newspaper reporter's notebook."). In the instant case, none of the statements made by the market analysts or newspaper accounts were pled with the requisite particularity to implicate defendants because none of the allegations indicates how defendants either controlled the content of the articles or knew that the articles would transmit defendants' statements without first being edited. Thus, none of these third-party accounts can comprise part of a viable claim against defendants under either Rule 9(b) or Rule 12(b)(6). Furthermore, many of the allegedly misleading newspaper accounts are not even attributed to a specific defendant in contravention of Rule 9(b). *In re Time Warner*, 9 F.3d at 265. The paragraphs which refer to the

---

**19.** This paragraph also attributes statements to defendant Perrigo which are mere puffery.

third-party accounts should therefore be stricken from the Complaint. (*See* Complaint at ¶¶ 31, 34, 44, 45, 53, 54, 66, 71, 78, 81, 84, 86, and 88.)

Among the remaining allegations, plaintiffs pled a number of allegations, in whole or in part, upon belief. (*See* Complaint at ¶¶ 39, 46, 47, 55, 61, 67, 68, and 77.) Where plaintiff pleads upon "information and belief," such allegations must be accompanied by a statement of facts upon which the belief is founded. *Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975). A plaintiff can make such a pleading only where the information that would provide evidentiary support for the allegation is solely within the other party's knowledge. *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 680 (6th Cir. 1988). All of the allegations pled upon information and belief, however, are accompanied by facts sufficient for plaintiffs to allege fraud and to assert that the evidentiary support for their claims lies within defendants' exclusive control.

b. *The Perrigo Defendants*
 i) *Outside Directors*

In the instant case, allegations are made against defendants and outside directors William Swaney, Ralph Klingenmayer, F. Folsom Bell, Robert Lasner, and Steven Hutchinson for their participation in the alleged scheme. None of the outside directors, however, are alleged to have personally made the statements or omissions which may form the basis of liability in this case. Rather, they are linked to those alleged material misstatements or omissions which were transmitted to the public via "group published information," such as the Registration Statements and Perrigo's press releases.

Under the "group pleading presumption," it is reasonable under certain circumstances to presume that the allegedly false and misleading information conveyed in a group published document is the collective actions of the officers of the corporation. *See In re GlenFed, Inc. Sec. Litig.,* 60 F.3d 591, 593 (9th Cir.1995). The fact that an outside director signed a group published document, without more, however, will not subject the outside director to liability. *In re Gupta Corp. Sec. Litig.,* 900 F.Supp. 1217, 1241 (N.D.Cal.1994). Similarly, the mere fact that an outside director was the member of a specific committee "is also insufficient to subject an outside director to liability under a group pleading theory." *In re GlenFed,* 60 F.3d at 593; *see also In re Syntex Corp. Sec. Litig.,* 855 F.Supp. 1086 (N.D.Cal.1994).

In order to plead fraud with particularity with respect to outside directors, even when relying upon the group published information presumption, plaintiffs' Complaint "must contain allegations that an outside director either participated in the day-to-day corporate activities, or had a special relationship with the corporation, such as participation in preparing or communicating group information at particular times." *In re GlenFed,* 60 F.3d at 593. This Court holds that plaintiffs have not alleged facts with respect to any of the outside directors that would show that these defendants either participated in Perrigo's day-to-day activities or had a special relationship with Perrigo involving the group published documents. This Court does not believe that whether or not an outside director sold securities in connection with this action bears any relevance to this issue. Thus, the claims alleged against the outside directors in Count I will be dismissed pursuant to Fed.R.Civ.P. 9(b).[20]

ii) *The "Remaining Perrigo Defendants"*[21]

The remaining allegations facing the remaining Perrigo defendants may be found in paragraphs 39, 47, 49, 50, 55, 57, 58, 65, 68, and 83. All were pled with sufficient particularity to survive a motion to dismiss except

---

**20.** Because plaintiffs' claims under Count I against defendant Swaney Associates are contingent upon William Swaney's allegedly fraudulent behavior, Count I will also be dismissed as to defendant Swaney Associates. (*See* Complaint at ¶ 8(b).)

**21.** Perrigo Company, Michael Jandernoa, Lonnie Smith, Richard Hansen, M. James Gunberg, and Mark Olesnavage.

for paragraph 68, which will be dismissed. However, because the group pleading presumption does not apply to oral statements made by individual defendants, *In re Gupta Corp.*, 900 F.Supp. at 1239, only defendants Jandernoa, Smith and Gunberg may be held liable for the allegations in paragraph 39, and only Jandernoa may be held liable for the allegations contained in paragraph 65.

### c. *Underwriter Defendants*

■ The Complaint alleges that the Underwriter defendants made knowing or reckless predictions of growth for Perrigo in various research reports. (*See* Complaint at ¶¶ 41–43, 46, 59, 61, 67, 69, 70, 72, 73, 77, 89–91.) The Underwriter defendants claim that the research reports do not support plaintiffs' conspiracy theory because these predictions tended to be less bullish and more accurate than the reports made by the other major unaffiliated analysts mentioned in the Complaint. Plaintiffs have responded that the Underwriter's fraudulent predictions influenced other unaffiliated analysts into making similarly rosy predictions, and that the Underwriters thereby "corralled the market." While the Underwriter defendants claim this is an unreasonable factual inference for the Court to draw, this Court disagrees. Whatever the likelihood that unaffiliated independent analysts would accept the facts asserted in the Underwriter defendants' research reports as true and perhaps adopt the analysis and conclusions contained in these reports, the inference that unaffiliated analysts would do so is not irrational. Within their industry, the Underwriter defendants are both well known and well respected. Because this Court must draw all reasonable inferences in favor of the non-moving party when reviewing a motion to dismiss, the Underwriter defendants' motion will be denied with respect to this issue.

Furthermore, regarding Rule 9(b), plaintiffs have pled all allegations facing the Underwriter defendants with sufficient particularity with respect to those omissions which rendered each report misleading. It must be noted, however, the plaintiffs must prove that the Underwriter defendants actually had knowledge of the alleged material omissions

in order for liability to attach. The possibility remains that the Underwriters were "corralled" by Perrigo, should Perrigo be found liable under this Count.

### d. *The Main Hillman Defendants*

None of the allegedly material misstatements were directly attributed to the main Hillman defendants. Rule 9(b) does not permit plaintiffs to "lump" defendants together, beyond the group pleading presumption, when charging them with fraudulent actions. *See* Fed.R.Civ.P. 9(b) (particularity requirement); *Sears v. Likens*, 912 F.2d 889, 892 (7th Cir.1990). The group pleading presumption does not apply to any of the main Hillman defendants.

Although plaintiffs' "control person" allegations under Counts V and VIII state that the main Hillman defendants, among others, controlled Perrigo and the Underwriter defendants, this Court holds that the main Hillman defendants cannot be held liable as primary violators under Count I for the statements or omissions made by either Perrigo or the Underwriter defendants. No facts have been alleged which would indicate that the main Hillman defendants exercised direct control over any of the individual allegedly material misstatements which form the basis of this claim. *See* Fed.R.Civ.P. 9(b). Thus, Count I will be dismissed as to the main Hillman defendants.

### E. Count II: Section 10(b) "Misuse of Insider Information" Claims

In Count II of the Complaint, plaintiffs allege that the defendants listed in Count I, except Perrigo, Smith, Bell, Lasner, and Hutchinson, also violated § 10(b) by improperly using material non-public information for their benefit or for the benefit of others. As such, Count II asserts a claim for misuse of insider information.

■ In order to state a claim for insider trading under § 10(b), the Complaint must adequately allege that: (1) a breach of a duty to disclose information or abstain from trading; (2) this information was material and nonpublic; and (3) the insider defendants acted with scienter. *See Aaron v.*

*S.E.C.*, 446 U.S. 680, 691, 100 S.Ct. 1945, 1952–53, 64 L.Ed.2d 611 (1980) (duty); *Chiarella v. United States*, 445 U.S. 222, 228–29, 100 S.Ct. 1108, 1114–15, 63 L.Ed.2d 348 (1980) (scienter). Mere possession of insider information does not obligate a defendant to abstain from trading under § 10(b). *See Chiarella*, 445 U.S. at 229, 100 S.Ct. at 1115. Rather, a defendant must have an obligation to disclose the information before he may be subject to liability. *Id.* In *Chiarella*, the Supreme Court held that the relationship between a corporate insider who has acquired confidential information by reason of his position with that corporation and the shareholders of the corporation "gives rise to a duty to disclose because of the 'necessity of preventing a corporate insider from … tak[ing] unfair advantage of the uninformed minority stockholders.'" *Id.* at 228–29, 100 S.Ct. at 1115 (quoting *Speed v. Transamerica Corp.*, 99 F.Supp. 808, 829 (D.Del. 1951)). One need not have a formal position with the corporation to have acquired a duty to disclose. *S.E.C. v. Maio*, 51 F.3d 623, 631–32 (7th Cir.1995).

### 1. The Perrigo Defendants

█ The Perrigo defendants, including the named outside directors, are considered to be insiders with access to information intended to be available only for corporate purposes and were therefore all under a duty to disclose all material nonpublic information or abstain from trading by virtue of their status as corporate insiders. *In re Cady, Roberts & Co.*, 40 S.E.C. 907 (1961).

The Perrigo defendants claim that all of their alleged omissions related to either nonmaterial information or information that was already known to the financial markets, and that they were therefore under no duty to disclose such information. While information would not be considered "nonpublic" if it is known to the market, this Court has determined that a number of alleged omissions were unknown to the investing public and may be also found to be material by the trier of fact. *See* Opinion, *supra*, at Parts III. D.2.b and III.D.2.d. Thus, the claims alleged

against the Perrigo defendants under Count II do not fail as a matter of law.

### 2. The Underwriter Defendants

The Underwriter defendants' only objection to the charges facing them in Count II is that they rest on the faulty premise alleged in Count I that the Underwriters artificially inflated the price of Perrigo stock for their own financial gain. Because this Court rejected the Underwriter defendants' argument under Count I, it will not serve as a defense to Count II. Thus, Count II will not be dismissed as to the Underwriter defendants.

### 3. The Main Hillman Defendants

█ The main Hillman defendants are alleged to have had knowledge of insider information by virtue of their positions as "controlling persons or shareholders." (Complaint at ¶ 106.) In specific, the Complaint alleges that the main Hillman defendants exerted their influence or control over the Company because, as a group, they controlled 20.8% of Perrigo common stock, had determined a majority of directors through the October 1993 offering pursuant to a 1988 Hillman Subscription Agreement, controlled two outside directors (Lasner and Hutchinson), and generally kept in continuous communication with Perrigo corporate officials during the class period.

As is shown subsequently, plaintiffs' allegations that the main Hillman defendants were "controlling persons" with regards to Perrigo and outside directors Lasner and Hutchinson are mere conclusory legal allegations.[22] In this regard, there are no facts alleged to show the basis for any such control. *See* Opinion, *infra*, at Part III.I.3. Furthermore, one does not obtain insider information simply by virtue of owning stock in a company. Rather, what is asserted in the Complaint is that the main Hillman defendants came into material insider information by virtue of their ongoing "special" relationship with Perrigo insiders.

To satisfy Rule 9(b), however, the "complaint must specify such facts as the times, dates, places, benefits received, and other

---

**22.** Neither Lasner or Hutchinson was named as a defendant in this Count.

details of the alleged fraudulent activity." *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir.1993). Plaintiffs claim that they have satisfied Rule 9(b) by pleading each of the main Hillman defendant's involvement in the fraudulent scheme with specificity. (Docket # 94, at 19–22.) This Court does not agree. Plaintiffs have a duty to plead fraud with particularity against each of the main Hillman defendants. The Complaint fails utterly in this regard. Even were this Court to assume that the Complaint should be read to charge each of the main Hillman defendants with knowledge of all the allegedly material nonpublic information which Perrigo failed to disclose to the market, the Complaint does not allege when any of the main Hillman defendants obtained the information, how this information was obtained, or from whom this information was obtained. As a result, the Complaint "offers no specific facts demonstrating wrongdoing which [the main Hillman defendants] could deny or otherwise controvert." *Neubronner,* 6 F.3d at 672. Because defendants can only respond to plaintiffs' allegations of fraud by offering a blanket denial that they ever received the allegedly material nonpublic information in question, Count II must be dismissed against the main Hillman defendants pursuant to Fed.R.Civ.P. 9(b). *Id.*

**4. Defendant Swaney Associates**

■ Defendant Swaney Associates is alleged to have been in possession of material nonpublic information due to its relationship with defendant and outside director William Swaney. (*See* Complaint at ¶ 109.) The Complaint alleges that William Swaney controlled Swaney Associates. The Complaint alleges that Swaney Associates is a Michigan Co–Partnership and that William Swaney

"owned all but two shares of its initial capital contribution." (Complaint at 7.) The Complaint has sufficiently pled that Swaney controlled Swaney Associates during the class period. As an entity controlled by William Swaney, defendant Swaney Associates may be assumed to have had the same knowledge as Swaney at this stage in the analysis. Further, an entity controlled by William Swaney, defendant Swaney Associates may be assumed to have acquired the same fiduciary duty—to disclose material nonpublic information or refrain from trading held by William Swaney. Thus, Count II will not be dismissed as to defendant Swaney Associates.

**F. Counts III and IV: Section 20A "Insider Trading and Communication" Claims**

■ In Count III of the Complaint, plaintiffs allege that the same defendants named in Count II violated § 20A(a) of the Exchange Act [23] by engaging in "insider trading." In Count IV of the Complaint, plaintiffs allege that defendants Jandernoa, Swaney, Ralph Klingenmeyer, Richard Hansen, Gunberg, Olesnavage, Henry Hillman, and Grefenstette violated § 20A(c) of the Exchange Act [24] by communicating material nonpublic information about Perrigo for their own personal gain to other defendants.

By their express terms, liability under both § 20A provisions may only apply to a person who has committed a predicate violation under one of the other provisions of the Exchange Act or the rules promulgated thereunder. *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., Inc.,* 32 F.3d 697, 703 (2d Cir.1994). Section 20A claims also sound in fraud and must therefore be pled with particularity under Fed.R.Civ.P. 9(b). *In re*

---

**23.** Section 20A(a) of the Exchange Act states that:

Any person who violates any provision of this chapter or the rules or regulations thereunder by purchasing or selling a security while in possession of material, nonpublic information shall be liable ... to any person who, contemporaneously with the purchase or sale of securities that is the subject of such violation, has purchased ... or sold ... securities of the same class.

15 U.S.C. § 78t–1(a).

**24.** Section 20A(c) of the Exchange Act states that:

Any person who violates any provision of this chapter or the rules or regulations thereunder by communicating material, nonpublic information shall be jointly and severally liable under subsection (a) with, and to the same extent as, any person or persons liable under subsection (a) to whom the communication was directed.

15 U.S.C. § 78t–1(c).

*AST Research Sec. Litig.*, 887 F.Supp. 231, 235 (C.D.Cal.1995). The only predicate violations alleged as to the defendants named in Counts III and IV are alleged in the first two counts of the Complaint. Counts I and II allege violations of § 10(b) and Rule 10b–5. Contrary to the main Hillman defendants' assertion, remedies available under § 20A are cumulative to remedies available under § 10(b).[25]

Because all § 10(b) and Rule 10b–5 claims were dismissed as to the main Hillman defendants under Counts I and II, Counts III and IV will also be dismissed as to the main Hillman defendants. Because predicate liability for violations of § 10(b) have been adequately alleged against the other defendants named in the first two counts, Count III will not be dismissed as to defendants Swaney Associates, Jandernoa, William Swaney, Ralph Klingenmeyer, Richard Hansen, Gunberg, and Olesnavage, and Count IV will not be dismissed as to defendants Jandernoa, William Swaney, Ralph Klingenmeyer, Richard Hansen, Gunberg, and Olesnavage.

### G. Count VI: Section 11 "False Filings" Claims

In Count VI of the Complaint, plaintiffs allege that the Perrigo defendants, except for Hansen and Olesnavage, and the Underwriter defendants violated § 11 of the Securities Act by transmitting allegedly false and/or misleading statements to the public by means of the Registration Statement filed September 23, 1993, and amended October 1 and 20, 1993, and the October 1993 Prospectus.[26]

25. The main Hillman defendants argued that plaintiffs may not plead § 20A violations because the only predicate violations are alleged under § 10(b). *See T. Rowe Price New Horizons Fund, Inc. v. Preletz*, 749 F.Supp. 705, 709–710 (D.Md. 1990). This theory is contradicted by the express language of the section, which states that "[n]othing in this section shall be construed to limit or condition ... the availability of any cause of action implied from a provision of this title." 15 U.S.C. § 78t–1(d).

26. Section 11(a) of the Securities Act provides, in relevant part:

(a) In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact

■ Section 11 of the Securities Act allows purchasers of a registered security to sue certain enumerated parties in a registered offering when false or misleading information is included in a registration statement. The section imposes a strict standard of liability on those parties who play a direct role in a registered offering in order to assure compliance with the disclosure provisions of the Securities Act. To establish a prima facie case, a plaintiff need only show that he purchased a security issued pursuant to a registration statement and that the statement made a material misrepresentation or omission. *In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 594 (E.D.Mich. 1985). Liability against the issuer of a security is almost absolute, even for innocent misstatements; other defendants may resort to a due diligence defense. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381–82, 103 S.Ct. 683, 687, 74 L.Ed.2d 548 (1983).

■ By its express terms, however, § 11 requires that the alleged omissions and misstatements of a Prospectus be material in order for liability to ensue. In the instant case, plaintiffs contend that each Registration Statement[27] is materially misleading due to certain allegedly material omissions. (*See* Complaint at ¶ 51; Opinion, *supra*, at 1112–1114.) Thus, the analysis of materiality which this Court utilized in reviewing plaintiffs' claims under § 10(b) and Rule 10b–5 is applicable here. *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1217 (1st Cir.1996); *see In re Numerex Corp. Sec. Litig.*, 913 F.Supp. 391, 397–402 (E.D.Pa.1996). Under this

or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, sue—(1) every person who signed the registration statement; (2) every person who was a director of ... the issuer at the time of the filing of the part of the registration statement with respect to which his liability is asserted; ... (5) every underwriter with respect to such security. . . .
15 U.S.C. § 77k(a).

27. Each Registration Statement contains the October Prospectus.

analysis, the Court determined that the failure to disclose their encouragements to customers to stockpile inventory (# 13), the declining purchases by main retail customers (# 15), and the hidden cost increases due to a change from the LIFO to the FIFO system of accounting (# 18) may be found to constitute material omissions by the trier of fact. *See* Opinion, *supra*, at Part III.D.2.b. Defendants' allegedly materially misleading statements are also not insulated from liability by the "safe harbor" provision found in Rule 175, 17 C.F.R. § 230.175, because plaintiffs have alleged that defendants' "forward-looking statements" were either made without a reasonable basis in fact or not in good faith. (*See* Complaint at ¶ 58 (referring to ¶¶ 50, 51).) Thus, plaintiffs' § 11 claims will not be dismissed as to any defendant named in the Count.

### H. Count VII: Section 12(2) "Statutory Seller" Claims

In Count VII of the Complaint, plaintiffs allege that the Perrigo defendants, the Underwriter defendants, Swaney Associates, and the main Hillman defendants violated § 12(2) of the Securities Act by fraudulently utilizing the Registration Statement, the October 1993 "roadshows," and the October 1993 Prospectus to facilitate the sale of securities at the October 1993 public offering.[28]

In determining who is a statutory seller under the Securities Act, the Supreme Court held that § 12(1) imposes liability on the owner who passed title, or other interest in the security, to the buyer for value. *Pinter v. Dahl*, 486 U.S. 622, 647, 108 S.Ct. 2063, 2078, 100 L.Ed.2d 658 (1988). Furthermore, after discussing statutory terms such as "sell," "purchase," and "offer," the Supreme

Court also held that § 12(1) liability extended "to the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Id.* Although the definition of seller set forth in *Pinter* was in context of § 12(1) of the Securities Act, it is well established that *Pinter* applies equally to § 12(2) of the Act. *Montcalm County Bd. of Comm'rs v. McDonald & Co. Sec., Inc.*, 833 F.Supp. 1225, 1231 (W.D.Mich.1993).

The only defendants who passed title of Perrigo stock through the secondary offering were the Underwriter defendants, who sold the stock pursuant to a firm commitment underwriting agreement. (*See* Registration Statement, Pl.Ex. 18.) Thus, the Perrigo defendants, the main Hillman defendants, and defendant Swaney Associates may only be held liable under the theory that they solicited the sales. *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1215–16 (1st Cir. 1996) (because issuer in a firm commitment underwriting does not pass title to the securities, the issuer and its officers cannot be held liable as "sellers" unless they actively solicited the purchases at issue); *see Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 287 (3d Cir. 1992) ("The *Pinter/Craftmatic* solicitation rule applies only when the defendant issuer is not in direct privity with the purchaser.... [When] the securities were purchased from an underwriter acting as a middleman, the defendant was not in privity with plaintiffs."), *cert. denied*, 506 U.S. 934, 113 S.Ct. 365, 121 L.Ed.2d 278 (1992).

■ In order to establish liability for solicitation under § 12(2), plaintiffs "must dem-

---

**28.** Section 12(2) of the Securities Act states that any person who

(2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading

(the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

15 U.S.C. § 77l(2).

onstrate direct and active participation in the solicitation of the immediate sale." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 636 (3d Cir.1989). In short, in "order to be considered a statutory 'seller,' a participant must engage in activity which could be considered an 'offer' as this term is defined by § 2(3) of the 1933 Act." *PPM America, Inc. v. Marriott Corp.*, 853 F.Supp. 860, 873 (D.Md.1994). The term "offer" is defined as "every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value." *Id.* (quoting 15 U.S.C. § 77b(3)).

■ Contrary to plaintiffs' suggestion, simply because a defendant is listed in the "Principal and Selling Shareholder's Section" of the Prospectus does not mean that plaintiffs were entitled to believe that they were purchasing stock from these defendants. *See Marriott*, 853 F.Supp. at 875 (market held to understand the significance of a firm underwriting agreement). However, the Prospectus itself is considered a solicitation document. *Gustafson v. Alloyd Co., Inc.*, ── U.S. ──, ──, 115 S.Ct. 1061, 1069, 131 L.Ed.2d 1 (1995) (under 12(2), "the term prospectus refers to a document soliciting the public to acquire securities"); *In re Proxima Corp. Sec. Litig.*, 1994 WL 374306 (S.D.Cal. May 3, 1994). Thus, the Perrigo defendants who actually *signed* the Registration Statements may be said to have solicited the public to purchase Perrigo stock. *Proxima*, 1994 WL 374306, at *5. These defendants are the Perrigo defendants, except Hansen and Olesnavage.

■ Although defendants Hansen, Olesnavage, Swaney Associates, and the Hillman defendants did not sign the Registration Statements, the Complaint alleges that they played a role in drafting and revising the Prospectus and in touting the stock at the roadshows. (Complaint at ¶ 135.) Furthermore, the Complaint states that all defendants named in this Count "were motivated, at least in part, by a desire to serve their own financial interests." (Complaint at ¶ 135.) Because plaintiffs' allegations are grounded in fraud rather than negligence, Fed.R.Civ.P. 9(b) is applicable to these claims. *Shapiro*, 964 F.2d at 288; *In re Consumers Power Co. Sec. Litig.*, 105 F.R.D. 583, 594 (E.D.Mich.1985). Rule 9(b) is satisfied with respect to defendant Olesnavage and his participation in the roadshows. (*See* Complaint at ¶ 55.) The Complaint, however, does not plead with particularity the role of either defendant Swaney Associates, the main Hillman defendants, or defendant Richard Hansen in the fraudulent solicitations. As such, the plaintiffs' § 12(2) claims will be dismissed as to these defendants.

## I. Counts V and VIII: Section 15 Securities Act and Section 20(a) Exchange Act "Controlling Person" Allegations

In Count V of the Complaint, plaintiffs allege that the Perrigo defendants, the main Hillman defendants, and the Underwriter defendants violated § 20(a) of the Exchange Act by controlling Perrigo, various trust funds, and members of the Underwriting syndicate with respect to the allegedly fraudulent behavior and sales surrounding the October 1993 public offering.[29] In Count VIII of the Complaint, plaintiffs allege that the Perrigo defendants, the main Hillman defendants, and the Underwriter defendants violated § 15 of the Securities Act in the same manner that they violated § 20(a) of the Exchange Act.[30]

---

**29.** Section 20(a) provides:
Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.
15 U.S.C. § 78t(a).

**30.** Section 15 of the 1933 Act provides:

Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable ground to believe in the exis-

■ The plain text of these statutes require plaintiffs to prove not only that one person controlled another person, but also that the "controlled person" is liable under some substantive provision of the statute. If no controlled person is liable, there can be no controlling person liability. *Shapiro,* 964 F.2d at 279 (citing *Wool v. Tandem Computers Inc.,* 818 F.2d 1433, 1440–41 n. 8 (9th Cir.1987)). The Sixth Circuit has not adopted a test for liability as a controlling person. *Sanders Confectionery Products, Inc. v. Heller Fin. Inc.,* 973 F.2d 474, 486 (6th Cir.1992), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993). However, the *Sanders* court cited with approval the test set forth in *Metge v. Baehler,* 762 F.2d 621 (8th Cir.1985), *cert. denied,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986) *and cert. denied,* 474 U.S. 1072, 106 S.Ct. 832, 88 L.Ed.2d 804 (1986), which sets forth the most lenient standard among the Circuits. *Metge* held that the plaintiff must demonstrate (1) that the defendant exercised control over the operations of the violator in general and (2) that the defendant possessed the power to control the transaction or activity upon which the primary violation is predicated. *See Sanders,* 973 F.2d at 486 (citing *Metge,* 762 F.2d at 631); *see also Carpenter v. Harris, Upham & Co.,* 594 F.2d 388, 394 (4th Cir.1979), *cert. denied,* 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979). In order to allege the first element adequately, "plaintiffs must show that the individual defendant had some indirect means of discipline or influence, even if short of actual direction, over the corporation." *In re Rospatch Sec. Litig.,* 760 F.Supp. 1239, 1248 (W.D.Mich.1991) (citing *Myzel v. Fields,* 386 F.2d 718, 738 (8th Cir.1967), *cert. denied,* 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968)). In short, "[t]here must be some showing of actual participation in the corporation's operation or some influence before the consequences of control may be imposed." *Burgess v. Premier Corp.,* 727 F.2d 826, 832 (9th Cir.1984)

tence of the facts by reason of which the liability of the controlled person is alleged to exist. 15 U.S.C. § 77o.

**31.** Richard Hansen, Jandernoa, Smith, Gundberg, and Olesnavage.

(citing *Herm v. Stafford,* 663 F.2d 669, 684 (6th Cir.1981)).

## 1. The Perrigo Defendants

The Perrigo defendants contend that it is impermissible for plaintiffs to simultaneously plead that the Perrigo's officers and directors not only controlled Perrigo, but were also controlled by Perrigo in turn. (*See* Complaint at ¶¶ 122, 140.) Without addressing the formal logic of plaintiffs' allegations, the Federal Rules of Civil Procedure allow for pleading in the alternative. Fed.R.Civ.P. 8(e)(2). Thus, this Court will not strike plaintiffs' control person allegations on the basis of this alleged inconsistency.

■ Normally, status or formal position by themselves will not suffice to state a claim of "control." *See Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1441 (9th Cir.1987). In *Wool,* however, the Ninth Circuit held that where the corporate officers are "charged with the day-to-day operations of a public corporation, it is reasonable to presume that these officers had the power to control or influence the particular transactions giving rise to the securities violation." *Id.* Thus, this claim will not be dismissed with respect to the primary corporate directors.[31]

■ With respect to the outside directors,[32] plaintiffs must plead facts from which some degree of influence or control over the Perrigo's operations may be inferred. *In re Gupta Corp. Sec. Litig.,* 900 F.Supp. 1217, 1243 (N.D.Cal.1994); *In re Rospatch,* 760 F.Supp. at 1248. As an initial matter, plaintiffs' attempts to link the outside directors to the alleged misstatements which appear in "group published information" is unavailing. *See* Opinion, *supra,* at Part III. D.3.b.i. The additional facts which support plaintiffs' control person allegations facing the outside directors are addressed with respect to each outside director below.

**32.** Ralph Klingenmeyer, Swaney, Bell, Lasner, and Hutchinson.

Regarding defendant Swaney, the Complaint states that he owned between 2–5% of Perrigo stock, and that he entered into a multi-year consulting service agreement with Perrigo which would allow him to participate in the planning process and in marketing Perrigo products. The Complaint, however, does not allege that Swaney actually performed any work for Perrigo, other than signing some of the group published information, during the class period. These minimal allegations do not suggest that defendant Swaney exercised any actual control or influence over Perrigo during the class period.[33]

■ Even fewer facts were alleged with respect to defendants Bell, Hutchinson, Lasner, and Klingenmayer. Bell is merely alleged to have signed Registration Statements, served on the Audit, Nominating, and Compensation Committee, and sold a sizable amount of stock during the class period. Similarly, the Complaint only alleges that defendants Lasner and Hutchinson signed group published information and that Lasner was on the Audit Committee. Regarding defendant Klingenmeyer, the Complaint notes that he was Perrigo's Executive President and a director *before* the class period, that he owned 2.7% of Perrigo stock, and that he signed group published material. A rational inference of control may not be drawn from any of these facts. Thus, plaintiffs' control person allegations will be dismissed with respect to the outside directors.

## 2. The Underwriter Defendants

■ The Complaint alleges that "[t]he Underwriter Defendants, by virtue of their position as lead underwriters of the October 1993 Offering had the power and influence and exercised the same to cause each member of the underwriting syndicate to sell the Perrigo stock offered in the October 1993 Offering in violation of the federal securities law, as complained of herein." (Complaint at ¶¶ 124, 142.) Plaintiffs cannot maintain an action by alleging control over members of the syndicate who were not named in the complaint and who will never be found liable for primary violations of the securities laws.

Moreover, the Complaint does not distinguish one Underwriter defendant from another under its "control person" allegations. As such, no single Underwriter defendant can be held liable for controlling each other. Thus, plaintiffs' control person allegations will be dismissed with respect to the Underwriter defendants under Fed.R.Civ.P. 9(b) and 12(b)(6).

## 3. The Main Hillman Defendants

■ The Complaint alleges that the main Hillman defendants, in their respective trustee capacities, controlled Perrigo and caused their trusts to sell Perrigo stock in violation of the federal securities laws. The Hillman trusts were named as nominal defendants. Because the Hillman trusts are not alleged to have committed any substantive violations of the securities laws, the acts of the Hillman trusts cannot form the basis of liability for the defendants who allegedly controlled them. Thus, the main Hillman defendants' liability as control persons is predicated solely on their alleged control over Perrigo.

The Complaint alleges that the main Hillman defendants exerted their influence or control over the Company because, as a group, they controlled 20.8% of Perrigo common stock, had determined a majority of directors through the October 1993 offering pursuant to a 1988 Hillman Subscription Agreement, controlled two outside directors (Lasner and Hutchinson), and kept in continuous communication with Perrigo corporate officials during the class period.

The main Hillman defendants argue that the Complaint fails to allege how they could have exercised any influence or control over Perrigo during the class period because the Hillman Subscription Agreement terminated the main Hillman defendants' power to appoint Perrigo directors in December 1991, Lasner and Hutchinson had both left the employ of Hillman-related entities earlier in 1993, and because mere stock ownership which falls short of a majority share is insufficient to demonstrate control.

---

**33.** The Complaint, however, has pled with sufficient particularity that defendant William Swaney controlled defendant Swaney Associates under both Count V and Count VIII.

This Court holds that formal means of control which have terminated in the past do not constitute a basis for alleging current control. This Court also holds that a minority stock interest, without more, is insufficient to base an allegation of control. *See Sanders Confectionery Prod., Inc. v. Heller Fin., Inc.,* 973 F.2d 474, 486 (6th Cir.1992), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993); *Laven v. Flanagan,* 695 F.Supp. 800, 807 (D.N.J.1988). Vague allegations of "constant communication" do not constitute additional means of discipline or influence over Perrigo. *See In re Rospatch,* 760 F.Supp. at 1248. Thus, plaintiffs' control person allegations will be dismissed as to the main Hillman defendants.

## J. Counts IX through XII: "Equitable" Claims

■ In Counts IX through XII of the Complaint, plaintiffs allege that the nominal Hillman and H/K defendants are subject to this Court's jurisdiction as "nominal" defendants under § 22 of the Securities Act and § 27 of the Exchange Act because these defendants were unjustly enriched by the substantive securities laws violations committed by the "main" defendants. Because all substantive violations alleged against the main Hillman defendants will be dismissed as a matter of law, the Complaint must be dismissed as to the nominal Hillman defendants. The Complaint will also be dismissed as to the nominal H/K defendants because the Complaint improperly named them (and the nominal Hillman defendants) as nominal defendants in the first place. Neither the nominal Hillman defendants nor the nominal H/K defendants actually fall under the definition of who is a nominal defendant.

In a 1991 decision, the Seventh Circuit clearly defined which types of parties qualify as nominal defendants. *See SEC v. Cherif,* 933 F.2d 403, 414 (7th Cir.1991), *cert. denied,* 502 U.S. 1071, 112 S.Ct. 966, 117 L.Ed.2d 131 (1992). *Cherif* held that a nominal defendant cannot be a "necessary" or "indispensable" party as those terms are used in Rule 19(a) of the Federal Rules of Civil Procedure. *Id.* at 414 n. 13. A necessary party is one who "claims an interest relating to the subject of

the action." Fed.R.Civ.P. 19(a). In contrast, a nominal defendant "has no ownership interest in the property which is the subject of litigation." *Cherif,* 933 F.2d at 414 (citations omitted). A nominal defendant "holds the subject matter of the litigation 'in a subordinate or possessory capacity as to which there is no dispute.'" *Id.* (quoting *Colman v. Shimer,* 163 F.Supp. 347, 351 (W.D.Mich. 1958)).

In *Cherif,* the Seventh Circuit explained that "[b]ecause the nominal defendant is a trustee, agent, or depositary who has possession of the funds which are the subject of litigation, he must often be joined purely as a means of facilitating collection." *Id.* After the dispute is resolved, "[t]he court needs to order the nominal defendant to turn over funds to the prevailing party." *Id.* A nominal defendant is not a real party in interest because it has no interest in the subject matter litigated. "His relation to the suit is merely incidental and 'it is of no moment to him whether the one or the other side in the controversy succeeds.'" *Id.* (quoting *Bacon v. Rives,* 106 U.S. 99, 104, 1 S.Ct. 3, 6, 27 L.Ed. 69 (1882)). Because of the disinterested status of the nominal defendant, "there is no claim against him and it is unnecessary to obtain subject matter jurisdiction over him once jurisdiction over the defendant is established." *Id.* (citing *Farmers' Bank v. Hayes,* 58 F.2d 34, 36 (6th Cir.1932), *cert. denied,* 287 U.S. 602, 53 S.Ct. 8, 77 L.Ed. 524 (1932)).

In the instant case, plaintiffs do not dispute that all of the parties named as nominal defendants have a real interest in the subject matter of the litigation—Perrigo common stock—either as direct shareholders, trust beneficiaries, or as the parent companies of direct shareholders. The so-called nominal defendants are therefore not disinterested parties who hold the stock in trust for the primary wrongdoers, as is required by *Cherif.* The plaintiffs have the burden of establishing that the court has subject matter jurisdiction over the defendants. The plaintiffs, however, have not alleged that any of the "nominal" defendants has violated any of the substantive provisions of the SEC regulations. Thus, this Court does not have juris-

diction over the nominal defendants and their motions to dismiss must be granted.

Furthermore, plaintiffs are correct insofar as the nominal defendants, as "non-parties," may not be joined without a showing that they possess illegally obtained profits without a legitimate claim to them. *Cherif,* 933 F.2d at 414 n. 11; *see SEC v. Antar,* 831 F.Supp. 380 (D.N.J.1993). However, this requirement operates not as the *only* impediment to establishing this Court's jurisdiction over the "nominal defendants," but rather as an additional impediment. *See Cherif,* 933 F.2d at 414 n. 11 (holding that the mere assertion of the allegedly nominal defendant's nominal status cannot justify an award of equitable relief). Because this Court finds that none of the parties were properly named as nominal defendants in the Complaint, this Court need not reach the issue of whether these defendants possessed a legitimate claim to the profits in question.

### K. Motion for Rule 11 Sanctions

 Rule 11 allows a court to impose sanctions upon attorneys who file documents with the court for improper purposes such as harassment or delay. Rule 11 prohibits assertions of frivolous claims or defenses, allegations or factual contentions lacking evidentiary support, and denials of factual contentions not reasonably based on a lack of information or belief. Fed.R.Civ.P. 11(b), (c). Rule 11 sanctions are appropriate when the district court determines that an attorney's conduct is not "reasonable under the circumstances." *Mann v. G & G Mfg., Inc.,* 900 F.2d 953, 958 (6th Cir.1990), *cert. denied,* 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990). A good faith belief in the merits of a case is insufficient to avoid sanctions. Rather, counsel must "meet an objective standard of reasonableness." *Id.*

This Court is aware that Rule 11 is encouraged to be used with greater frequency with respect to class action securities litigations. However, this Court does not believe that the instant suit is clearly frivolous, nor does this Court, at this time, consider the deficiencies in this lengthy Complaint to invalidate the remaining claims. Thus, the Perrigo and the

nominal H/K defendants' motion for Rule 11 sanctions will be denied at this time.

### L. Motion for an Undertaking of Costs and Attorneys' Fees

 When considering whether plaintiffs should be required to post an undertaking, the court must determine whether the defendants have shown that the plaintiffs either commenced their lawsuit in bad faith or that plaintiffs' claims border on the frivolous. *Weil v. Investment/Indicators, Research & Management, Inc.,* 647 F.2d 18, 22 (9th Cir. 1981). The Ninth Circuit explained their ruling when it held that

> an order requiring an undertaking need not be based on a formal, factual finding that the claim or defense is obviously without merit or is asserted in bad faith.... It is only required that an eventual finding of bad faith or obvious lack of merit appear likely to the district court in view of the evidence before it.

*Id.* In the instant case, defendants argue that plaintiffs have filed a number of claims which appear "likely to border on the frivolous."

This Court holds that while a number of plaintiffs' claims are insubstantial, the Complaint is not so replete with insubstantial claims such that an undertaking is required. Thus, the Perrigo defendants' motion for an undertaking of costs and attorneys' fees pursuant to § 11(e) of the Securities Act will be denied.

### IV. *Conclusion*

In summary, this Court will grant the motions to dismiss filed by the main Hillman defendants, the nominal Hillman defendants, and the nominal H/K defendants. This Court will also deny the motions for Rule 11 sanctions and to post an undertaking of costs and attorneys' fees. This Court further holds that Counts IX, X, XI, and XII are dismissed as to all defendants.

Regarding the remaining counts alleged against the remaining defendants, this Court discerns the plaintiffs' viable claim under Count I to be that Michael Jandernoa, Lonnie Smith, James Gunberg, and the Underwriters—while making contemporaneous un-

reasonable predictions of future growth for Perrigo—hid the fact that Perrigo's sales and profits were temporarily "fluffed up" thereby successfully creating a "bubble" which ensured the success of the secondary offering and maintained the market for a short time thereafter. Defendants were able to hide the truth from the market by failing in their duty to disclose: Perrigo's lack of plans to invest more money in fiscal 1994 (# 8); encouragements to customers to stockpile inventory (# 13); the declining purchases by main retail customers (# 15); the hidden cost increases due to a change from the LIFO to FIFO systems of accounting (# 18); that there were artificially inflated earnings and revenue figures for the first two quarters of fiscal 1994 due to increased revenues generated by sales promotions which had borrowed large sales from the last two quarters (# 22); and that there were no international prospects due to Wal–Mart's stated preference for regional suppliers (# 23).

Under Count II, defendants Jandernoa, William Swaney, Ralph Klingenmeyer, Richard Hansen, Gunberg, Olesnavage, Swaney Associates, and the Underwriter defendants may be liable for insider trading if plaintiffs can establish that the omissions were material and known to defendants. Under Count III, defendants Swaney Associates, Jandernoa, William Swaney, Ralph Klingenmeyer, Richard Hansen, Gunberg, and Olesnavage may be held liable for insider trading. Under Count IV, defendants Jandernoa, William Swaney, Ralph Klingenmeyer, Richard Hansen, Gunberg, and Olesnavage may be held liable for communicating insider information. Under Count VI, the Perrigo defendants (except for Hansen and Olesnavage) and the Underwriter defendants may be held liable if plaintiffs can establish that their encouragements to customers to stockpile inventory (# 13), the declining purchases by main retail customers (# 15), or hidden cost increases due to a change from the LIFO to FIFO systems of accounting (# 18) constitutes a material omission from the Prospectus and Registration Statements. Under Count VII, the Underwriter defendants and the Perrigo defendants (except Richard Hansen) may be held liable as "statutory sellers." Finally, under Counts V and VIII, Perrigo, Jandernoa, Smith, and Gunberg may be held liable as control persons.

Furthermore, this Court has decided to strike immaterial and redundant material from the Complaint pursuant to Fed.R.Civ.P. 12(f).

An Order consistent with this Opinion will be entered.

## ORDER

In accordance with the Opinion issued on this date,

IT IS HEREBY ORDERED that the motions to require certain plaintiffs to post an undertaking for the payment of costs and attorneys' fees filed by the Perrigo defendants (docket no. 43), the Underwriter Defendants (docket no. 85), and defendant Swaney Associates (docket no. 86) are all DENIED.

IT IS FURTHER ORDERED that the Perrigo and the nominal H/K defendants' motion for Rule 11 sanctions (docket no. 102) is DENIED.

IT IS FURTHER ORDERED that the motions to dismiss filed by the nominal Hillman defendants (docket no. 67) and the nominal H/K defendants (docket no. 72) are GRANTED. Juliet Simonds, William Talbott Hillman, Audrey Fisher, Henry Hillman, Jr., Juliet Challenger, Inc., Wilmington Investments, Inc., The Hillman Company, Joseph Klingenmeyer, John Klingenmeyer, Amy Klingenmeyer, Mrs. Richard G. Hansen, Kristi Hansen, Richard Hansen, Elizabeth Hansen, Mrs. Ralph Klingenmeyer as Trustee for the Joseph Klingenmeyer Trust, John Klingenmeyer Trust, Amy Klingenmeyer Trust, Joseph Klingenmeyer Management Trust, John Klingenmeyer Management Trust, and the Amy Klingenmeyer Management Trust are hereby dismissed as "nominal" parties to this case.

IT IS FURTHER ORDERED that the main Hillman defendants' motion to dismiss (docket no. 68) is GRANTED. Henry Hillman, C.G. Grefenstette, Edward Craig, and Elsie Hillman are hereby dismissed as parties to this case.

IT IS FURTHER ORDERED that the motions to dismiss filed by the Underwriter defendants (docket no. 66), defendant Swaney Associates (docket no. 74), and the Perrigo defendants (docket nos. 73–1, 73–2, and 78) are **GRANTED IN PART AND DENIED IN PART.** This Court holds as follows:

1. Counts IX, X, XI, and XII are dismissed in their entirety.

2. Count I is dismissed as to defendants William Swaney, Ralph Klingenmayer, F. Folsom Bell, Robert Lasner, and Steven Hutchinson.

3. Counts V and VIII are dismissed as to defendants William Swaney, Ralph Klingenmayer, F. Folsom Bell, Robert Lasner, Steven Hutchinson, and the Underwriter defendants.

4. Count VII is dismissed as to defendant Swaney Associates and defendant Richard Hansen.

5. Paragraph numbers 28, 30, 36, 52, 60, 62, 63, 79, and 85, which relate to Perrigo Company's past or current business, paragraph number 29, which represents pure omissions, paragraph numbers 32, 35, 37, 38, 64, 75, 80, which represent mere puffery, paragraph numbers 31, 34, 44, 45, 53, 54, 66, 71, 78, 81, 84, 86, 88, which relate to inactionable newspaper accounts, and paragraph number 68, which fails to comply with Fed.R.Civ.P. 9(b), are hereby stricken as immaterial pursuant to Fed.R.Civ.P. 12(f).

6. Plaintiffs' allegations relating to statements or omissions made in paragraph 39 is actionable against only defendants Michael Jandernoa, Lonnie Smith, and M. James Gunberg.

7. Plaintiffs' allegations relating to statements or omissions made in paragraph 65 is actionable against only defendant Jandernoa.